STATE EX REL. THOMPSON, Appellant, vs. BELOIT CITY SCHOOL DISTRICT and others, Respondents.

*February 9—May 8, 1934.*

The cause was submitted for the appellant on the briefs of *Woolsey, Caskey, Woolsey & Hopper* of Beloit, and for the respondents on those of *R. A. Edgar* of Beloit and *Olin & Butler* of Madison.

The following opinion was filed March 6, 1934:

ROSENBERRY, C. J. The questions raised upon this appeal are: (1) Whether certain private and local laws, creating the Beloit City School District, were repealed by ch. 425, Laws of 1927; (2) if they were, whether ch. 207, Laws of 1929, passed for the express purpose of re-enacting the said private and local laws, was effective to accomplish this purpose; and (3) assuming a negative answer to each of the

foregoing questions, whether ch. 256, Laws of 1929, operated to continue the Beloit City School District under its existing organization. This requires a statement in some detail of the facts, none of which are in dispute.

The defendant district was created by ch. 76 of the Private and Local Laws of 1868. Amendments affecting the boundaries of the district were enacted in 1869 and again in 1870. A further amendment in 1880 required the city school board each year to elect a clerk and treasurer of said district. The law of 1868, heretofore referred to, combined two existing school districts, and provided that the pre-existing districts should be perpetuated, and that their school boards, together with the city superintendent, should comprise the school board of the newly-created district. The board as thus constituted was given all the powers conferred by law upon district school boards, including the right to vote and raise money by tax to maintain the public schools in the district, and also to erect and maintain a high school for the district. The district as thus created included all of the city of Beloit and portions of the town of Beloit and the town of Turtle. The schools of the city of Beloit have been built and operated under this chapter down to the present time.

Ch. 425, Laws of 1927, which relator contends has repealed the private and local laws creating the defendant district, and which consequently has destroyed its franchises and existence as a school district, is entitled:

"An Act to revise and codify chapters 39, 40 and 41 of the statutes relating to public schools, and various sections of the statutes relating to said subject."

Secs. 40.50 and 40.51 (1), ch. 425, read as follows:

"40.50 *City school plan.* Sections 40.50 to 40.60 provide a plan or system of school administration for each city of the fourth class whose territory constitutes an entire school district, and each city of the second or third class, to the end that city schools shall be as nearly uniform as practicable. All general school statutes govern city schools as far as appli-

cable, and as they are in harmony with this plan. This plan shall become effective on July first, 1928, except that the members of school boards shall be elected the first Tuesday of the preceding April.

"40.51 *City is a school district.* (1) Each city, affected by this plan, is a single and separate school district; and any territory outside of the city which is joined with city territory in the formation of a school district, when this plan becomes effective, is hereby attached to the city for school purposes."

Beloit is a city of the third class, and it is the contention of the relator that the portions of ch. 425 above quoted indicate a clear, unambiguous, legislative intent and purpose to provide a uniform system of school administration for each city of the third class, without exception, and that, while there is no express repeal of the private and local laws creating the Beloit City School District, the legislative purpose to achieve uniformity and to brush aside and repeal all acts which obstruct or interfere with such clearly expressed objective, is indicated beyond the possibility of a doubt and makes it unnecessary to resort to any technical rules of statutory construction.

It is the contention of the relator that secs. 40.50 to 40.60, ch. 425, Laws of 1927, which are relevant here, deal specifically and comprehensively with school systems of every city of the third class, and that each city affected by the plan of the statute is a single and separate school district, and that any territory outside the city is attached to the city for school purposes. To reinforce this argument it is pointed out that several sections expressly affected by ch. 425 clearly show such an intent upon the part of the legislature. For example, sec. 40.64, Stats. 1925, provides in substance for a uniform city school plan and gives to cities other than those of the first class an option to come within such uniform school plan by proceeding in the manner provided by this section. Sec. 40.64 provides, in case there is an adoption of the city

school plan in each school district, that the result of the ref-erendum shall be to create one district out of all the old dis-tricts, the parts of districts lying outside the city being attached thereto for school purposes. It is claimed by relator that this section plainly relates to all cities not of the first class, and that its provisions could have been taken advantage of by the city of Beloit with the results indicated by the above quotation from the statute. It is provided in ch. 425, Laws of 1927, that—

"Sections 40.45, 40.46, *40.64,* 40.645, 40.65, 40.665, 40.67, 40.675, 40.68 and 40.695 of the statutes are consolidated, re-numbered sections 40.50 to 40.60 and revised to read:"

A careful examination of the provisions of secs. 40.50 to 40.60 discloses that while portions of sec. 40.64 have been revised and placed in various portions of these sections, the option which forms the principal provision of sub. (1) is not retained. In other words, whereas in 1925 there existed machinery by which the city of Beloit could exercise the option to adopt the city school plan, ch. 425, in addition to express language constituting every city of Beloit's class a school district, and after retaining in force other portions of sec. 40.64, completely omits the option features therein con-tained, thus indicating a legislative intent to impose a uni-form system of school government upon all cities falling within the classes described by the act and including Beloit.

It is our conclusion that the contentions of the relator are sound. The statute itself is so clear as not to create any am-biguity calling for rules of construction, and the legislative history of this type of legislation confirms this conclusion. If the statute were held to be ambiguous in terms, several of the arguments of respondents would be material and quite persuasive.

Respondents' contentions are strongly and ably urged and deserve separate consideration. It is first contended that the title of ch. 425 indicates no intent to repeal special laws creat-

ing particular school districts. The title of the act, heretofore quoted, certainly contains no specific reference to the private and local laws creating the Beloit School District. It is contended that only chapters of the general statutes are intended to be revised, so far as the title discloses the legislative intent. It is further claimed that the section expressly continues in force "all sections and parts of sections now contained in chapters 39, 40 and 41 of the statutes which are not mentioned or treated in this act." It is urged that the revisor's notes disclose no purpose of repealing special and local laws creating school districts; that nowhere in the act is there any reference to any special or local law, by title. Respondents contrast this with ch. 62, which revised the general city charter law and placed all cities of the second, third, and fourth classes under the general charter law, in which chapter the legislature expressly provided that "all special charters for cities of the second, third and fourth classes are hereby repealed and such cities are hereby incorporated under ch. 62 of the statutes." It is also contended that no provision was made in ch. 425 for the transfer of property of the school district, nor for the assumption by the city of Beloit or by the towns of Turtle and Beloit of existing contracts and obligations of the district. The latter circumstance is contended not only to indicate that there was no intent to repeal the special law creating the Beloit School District, but is relied upon as creating an ambiguity when the language of ch. 425 is sought to be applied to the Beloit situation. Reliance is had upon the case of *Rice v. Ashland County*, 108 Wis. 189, 192, 84 N. W. 189. There the court said:

"Uncertainty of sense does not alone spring from uncertainty of expression. It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, an obscurity of meaning exists, calling for judicial construction."

Reliance is also had upon the doctrine that repeals by implication are not favored, quoting *Milwaukee County v. Milwaukee Western Fuel Co.* 204 Wis. 107, 235 N. W. 545; *Joyce v. Sauk County,* 206 Wis. 202, 239 N. W. 439; that "in cases of ambiguity arising from the enactment of a revisor's bill [ch. 425 was a revisor's bill], it will be presumed that there was no intention to work any radical change in the law." *Hillier v. Lake View Memorial Park,* 208 Wis. 614, 621, 243 N. W. 406; *State ex rel. Little Yellow D. Dist. v. Juneau County,* 199 Wis. 476, 479, 227 N. W. 12.

It is claimed to be a definite rule for the construction of statutes that a law dealing with a special subject will not usually be affected by a general law dealing with the same subject-matter. *Kollock v. Dodge,* 105 Wis. 187, 195, 80 N. W. 608; *Gymnastic Association v. Milwaukee,* 129 Wis. 429, 109 N. W. 109. These contentions are stated together because they all involve rules of statutory construction that we deem inapplicable in view of our conclusion that the language of the act is entirely free from ambiguity. All of them would be entitled to some weight if the legislative intent had not been so unambiguously disclosed, but none of them have any purpose other than ascertainment of the legislative intent, and none are effective to overthrow such intent where it otherwise clearly appears. The purpose to achieve uniformity by imposing a system of school government upon all cities except those of the first and certain of those of the fourth classes is so radically inconsistent with the continuance of the corporate entity and franchises of the Beloit School District and any other districts so organized as to compel the conclusion that it was intended to repeal the special acts. This intent could exist even in the absence of knowledge on the part of the legislature that there were school districts organized as is the Beloit School District. Nor does the fact that the law makes no provision for the transfer of property and contract obligations from defendant

district to the city of Beloit modify the scope of the act or disclose an ambiguity when the law is sought to be applied.

In connection with this contention it may be stated that there is a limitation upon the power of the legislature to abolish municipal corporations and to annex the property of the dissolved corporation to another municipal corporation without provision for a fair and equitable distribution of its property and liabilities. *Town of Milwaukee v. City of Milwaukee,* 12 Wis. *93, 103. It was there held that while such a corporation is subject to control, change, and even destruction, so far as its public function is concerned, it held its property as does any individual, and that these property rights must be fairly and equitably provided for in whatever changes are made in its franchises; that in default of this the corporation retains such entity as is essential to vindicate these property rights. In response to this decision a section was added to the statutes intended to provide a scheme to equitably distribute and to adjust property rights and debts in such a situation. No attempt will be made to trace the legislative history of this section, which appears as sec. 944, Stats. 1898, and sec. 66.03 of the present statutes. This section provides:

"66.03 *Adjustment of assets and liabilities on division of territory.* (1) *Definition.* In this section 'municipality' includes school district, town, village and city.

"(2) *Basis.* Except as otherwise provided in this section when territory is transferred, in any manner provided by law, from one municipality to another, there shall be assigned to such other municipality such proportion of the assets and liabilities of the first municipality as the assessed valuation of all taxable property in the territory transferred bears to the assessed valuation of all the taxable property of the entire municipality from which said territory is taken according to the last assessment roll of such municipality."

There follow detailed provisions furnishing the machinery and basis for this apportionment and adjustment. In *Con-*

*way v. Joint School District,* 150 Wis. 267, 136 N. W. 612, it is indicated that sec. 944, as in force in 1912, apparently applies—

"to a case where territory is set off or taken from some municipal corporation and attached to another but the original corporation is still in existence."

In *State ex rel. School Dist. No. 1 v. Schriner,* 151 Wis. 162, 138 N. W. 633, the court appears to make the same assumption with respect to this section. However, the section as it now stands is clearly intended to cover the situation presented when the municipality is dissolved and its territory annexed or transferred to another municipality. The scope of the section is indicated in sub. (2), which provides that the section shall operate in every case where territory is transferred from one municipality to another, and in sub. (5), which provides:

"When any municipality is dissolved by reason of all of its territory being so transferred the board or council thereof existing at the time of such dissolution shall for the purpose of this section, continue to exist as the board or council of such municipality."

It is obvious that the existence of sec. 66.03 destroys the force of the argument that the application of ch. 425 to the Beloit situation would produce an unconstitutional or an absurd result. It may be supposed that the legislature, having already by general law provided for the apportionment of property and debts in sec. 66.03, would not consider it necessary to expressly provide for the matter.

The rule that repeals by implication are not favored, and that the law dealing with a special subject would ordinarily not be affected by a later general law dealing with the same subject, are, like all other rules urged by respondents, rules of construction which do not control an otherwise clear intent, evidenced by the act itself. In addition to this, this

court in *Gymnastic Association v. Milwaukee, supra,* laid down a further rule of construction as follows:

"There is, of course, a well-recognized rule of statutory construction to the effect that an act directed towards a special subject is ordinarily preponderant over a more general act, yet that is, at best, but a rule of construction, yielding whenever a contrary legislative intent is reasonably apparent; and such intent will ordinarily be inferred, first, where the later and more general act governs the whole subject to which it relates, and is manifestly designed to embrace the entire law thereon; and, more specific still, when the earlier statute is special only in the sense that it applies to a single case, of which there are many in the state, and the later statute is general in its operation and applies to all such cases, then the earlier one is deemed to be superseded by the latter and, so far as inconsistent, to be repealed."

It is our conclusion that ch. 425 was intended to repeal the private and local laws under which defendant school district was organized.

It is next contended that if ch. 425 be so construed, it would violate sec. 18, art. IV, Const., which reads as follows:

"No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

It is claimed by respondents that a private or local law can only be repealed by a private or local law, and that the title of such law must conform to sec. 18, art. IV, Const. In *State ex rel. Turner v. Bell,* 91 Wis. 271, 274, 64 N. W. 845, the court said:

"If that [an act of 1889] was a special law, it needs no argument to demonstrate that the act which repeals it must be also a special law."

This comment must be limited in scope to the facts concerning which it was made. In the *Turner Case,* the legislature had passed a law, the sole purpose of which was to

repeal a drainage act which had been held to be a special law. It needs no argument to demonstrate that the repealing act was also a special law. It was not intended to lay down as a principle of constitutional law that a local or private law can only be repealed by a private or local law, or that a general law repealing a local or private law becomes a private or local law, at least in the sense that its title must conform to sec. 18, art. IV, Const. Ch. 425 is clearly a general law. It cannot become a local law merely by reason of the fact that it modifies or repeals local laws. The law is of state-wide interest, concern, and scope. The provisions of sec. 18, art. IV, Const., therefore have no effect. Outside of the statement from the *Turner Case,* heretofore referred to, no authority is cited to the effect that the repeal of a private or local law cannot be accomplished by a general law, or that the general law which purports to affect private and local laws thereby becomes a private and local law to the extent necessary to bring into operation the constitutional requirements as to title, applicable to such laws. The case of *Gymnastic Association v. Milwaukee, supra,* clearly assumes that the contrary is the rule. To the same effect see also *Allaby v. Mauston Electric Service Co.* 135 Wis. 345, 116 N. W. 4

The next question is whether ch. 207, Laws of 1929, which re-enacts the private and local laws creating the Beloit City School District, is unconstitutional and void. It is asserted that it is contrary to par. 6, sec. 31, art. IV, Const., which prohibits the legislature from enacting any special or private law for the assessment or collection of taxes. It is pointed out that secs. 40.55 and 40.56, Stats. 1929 (and which are a part of ch. 425, Laws of 1927), prescribe a much different method of procedure for the assessment of taxes than that prescribed under the special acts pertaining to the Beloit City School District, and that this act falls

within the provisions of the constitution prohibiting the legislature from enacting any special or private law for assessment or collection of taxes. This contention is clearly sound, and the objection is fatal to the validity of the act unless the portions of ch. 207 dealing with taxes are severable from the rest of the section. Clearly they are not. The provisions with reference to the assessment and collection of taxes are so vital and so essential to the purposes of ch. 207 as to compel the conclusion that the balance of the act would not have been adopted without the portion referred to.

In view of this conclusion, we deem it unnecessary to consider whether ch. 207, Laws of 1929, is also repugnant to par. 7, sec. 31, art. IV, Const., prohibiting the legislature from enacting any special or private laws for granting corporate powers or privileges, except to cities.

The next question is whether ch. 256, Laws of 1929, was effective to continue the management of the Beloit city schools as it existed prior to the enactment of ch. 425, Laws of 1927. It is contended by defendants that such was the effect of the enactment in question, no matter what view is entertained as to the questions heretofore discussed. Secs. 1 and 2 of ch. 256 repealed sec. 40.52 (1) and enacted a new sec. 40.52 (1), reading as follows:

"The school affairs of each city referred to in section 40.50 shall be managed by a board of education consisting of the same number of members and selected in the same manner as such board was constituted and selected at the time of the taking effect of this subsection. Such board shall continue to be so constituted and selected until and unless changed by referendum vote of the electors of such city as herein provided. . . ."

Sec. 3, ch. 256, is curative in character and provides:

"All action heretofore taken since July 1, 1927, in the election or appointment of the members of school boards in the

cities referred to in section 40.50, is hereby validated and legalized notwithstanding any failure to conform to all provisions of law governing such election or appointment. All acts of every such school board heretofore taken since July 1, 1927, are validated and legalized to the same extent and with like effect as though such boards were legally constituted at the time of taking such action."

In so far as sec. 3 is concerned, it may be eliminated from consideration in this case for the reason that it cannot possibly be construed to have any effect beyond the date when ch. 256 became effective. Hence this section is of no consequence or materiality in this case. It is urged, however, by defendants that secs. 1 and 2, which are general in effect and prospective in operation, do constitute whatever boards existed at the time of taking effect of the section, with the management of the affairs of the district created by ch. 425, until such time as the situation should be changed by referendum as provided in the section. It should be noted that this contention presupposes the destruction by ch. 425 of the corporate entity and franchises of the Beloit School District, as well as the other two districts out of which the Beloit School District is created. It is merely contended that the persons who constituted the school board of the dissolved district are expressly made and constituted the school board of the newly-created city district until such time as a referendum is had. With this contention we agree. It should be pointed out, however, that in this view of the case, the board as constituted and elected at present has the powers and is subject to all of the limitations contained in secs. 40.50 to 40.60. It should further be pointed out that this in no way affects the conclusion that the corporate franchises of the defendant district and the two other districts out of which it is created, have terminated, leaving the proper adjustment of assets and liabilities to be taken care of under sec. 66.03.

*By the Court.*—That part of the order sustaining defendants' demurrer to the complaint is reversed; that part of the

order overruling plaintiff's demurrer to the answer is reversed, and the cause is remanded for further proceedings as indicated in the opinion.

FOWLER and FRITZ, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on May 8, 1934.