Ross and others, Appellants, vs. CITY OF CRANDON and others, Respondents.

*February 12—March 12, 1940.*

For the appellants there were briefs by *James Durfee* of Antigo, attorney, and *Eberlein & Eberlein* of Shawano of counsel, and oral argument by *M. G. Eberlein, Sr.,* and *M. G. Eberlein, Jr.*

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

FRITZ, J.   The judgment under review was based upon the court's conclusions of law that the common schools of the city of Crandon constituted a city school district, under ch. 40, Stats., and subject to secs. 40.50 to 40.60, Stats.; that defendants, Kline, Hansen, and Sparks, constituted the board of education of the city school district as *de facto* officers thereof with the powers of such a board, although to constitute them members they should have been elected by the electors, instead of being selected by appointment by the mayor and confirmation by the common council; that all their acts pertaining to the razing of the school building in question were ratified by the city by action of its common council; and that the city acted within its power through its agency, the board of education, in ordering and proceeding with the razing of the building.   Plaintiffs' principal contention in seeking a reversal of the judgment is that the public schools in Crandon were still under the control and management of the common school district for the territory in question which existed at the time of the incorporation of Crandon as a city on January 28, 1909, and that therefore the board of education and the common council were without authority to order and proceed with the razing of the building.   That contention is based upon plaintiffs' claims that

the incorporation of the unincorporated village of Crandon as a city of the fourth class did not change the status of the existing common school district for the territory which constituted the area of the city upon its incorporation; that an election was required under the statutes in order to change that status; that, although subsequently sec. 40.50, Stats. 1927, placed the common school district under the city school plan, which is provided by secs. 40.50 to 40.60, Stats., that enactment required the members of a board of education under that plan to be elected by the electors; that, because the status of the common school district has not been changed, the city school plan and the selection of the members thereof by appointment, instead of by being elected by the electors, has not been in effect; and that therefore the officers of the old common school district continued as *de jure* officers until their successors were duly elected and qualified, and the members of the city's board of education, who were selected by appointment by the mayor and confirmation by the common council under the city school plan, are neither officers *de jure* nor *de facto*.

The contentions and claims of the plaintiffs cannot be sustained. On the contrary, due consideration of the facts and statutes involved compels the conclusions that the school system of Crandon is and has been under the city school plan ever since its incorporation as a city in January, 1909; and that when the razing of the building was ordered by the board of education its members were officers *de jure,* by virtue of their appointment and confirmation by the mayor and common council, respectively, of the city.

Crandon was an unincorporated village until it was organized under ch. 40a, Stats., as a city of the fourth class on January 28, 1909. At that time sec. 925—113 of ch. 40a, Stats. (as amended by ch. 287, Laws of 1899), provided (so far as here material) that,—

"*In every city or village* which shall adopt this chapter for its government, or shall have become newly organized under

it by reason of the provisions of section 925*g*, Wisconsin statutes of 1898, if there shall be or shall have been at the time of such adoption, a board of education or school board elected by the people under the provisions of its charter, or the school district system is in force, and in all cases of such cities or villages which have heretofore adopted the provisions of this act, or become newly organized as aforesaid, and which shall have continued to act under the old school district or school board system, the election and organization, powers and duties of such board shall not be affected by this chapter; and such system shall continue until changed by a vote of the electors of such school district. . . .

*"In all other cities governed by this chapter, the board of education shall consist of one commissioner from each ward and three from the city at large, to be appointed by the mayor and confirmed by the common council,* or elected by the council if determined by ordinance. . . . "

Prior to the amendment thereof by ch. 287, Laws of 1899, the first clause in that sec. 925—113, Stats., read: *"In every city* which shall adopt. . . . "    In *State ex rel. McCann v. Enos,* 97 Wis. 164, 165, 72 N. W. 222, the word "city," as used in that clause, had been held to mean "an existing city;" and in that connection, the court held that "in all other cases (this includes a village which organizes as a city) the board of education shall consist of one commissioner from each ward, and three from the city at large, to be appointed by the mayor and confirmed by the council."    Consequently, under the statute construed in that case, the schools in an incorporated city, which prior to its incorporation had not been an *existing* city, were required to be under the control of a board of education, the members of which were to be selected by appointment by the mayor and confirmation by the council.    The same consequences as to the type of school system and the method of selecting the members of the school board were made applicable to every existing "village" which became an incorporated city after the amendment by ch. 287, Laws of 1899, which inserted the words "or village" after the words "in every city" in the above quoted opening clause

of sec. 925—113, Stats. However, that amendment did not render inapplicable to the term "in every city" and the added words "or village" the ruling in the *McCann Case, supra,* that there was meant thereby an *existing* "city or village." But that term as amended still did not include an *unincorporated* village,—such as Crandon was prior to January 28, 1909,—because then, as well as at all times since, there was in effect and applicable to the word "village," wherever used in the statutes including, of course, sec. 925—113, Stats. 1899, the definition which is now sec. 370.01 (33), Stats., that,—

"The word 'village' imports only a municipal corporation organized by some special act or under some general law, except when a different definition shall be expressly given to the same."

In view of that definition the unincorporated village of Crandon was not to be included under the term "in every city or village" as used in sec. 925—113, Stats., and likewise was not to be included under the word "village" as used in the provision that "whenever the population of any village shall exceed fifteen hundred as shown by the last national or state census such village shall become a city of the fourth class." Sec. 925*g,* Stats. 1898. Consequently, when Crandon was incorporated as a city in January, 1909, it was in the class of cities to which there was applicable the provision in sec. 925—113, Stats., that, *"In all other cities governed by this chapter, the board of education shall consist of one commissioner from each ward and three from the city at large, to be appointed by the mayor and confirmed by the common council,* or elected by the council if determined by ordinance." Therefore Crandon's school system automatically came under the city school plan upon its incorporation as a city in January, 1909; and under that plan it was required to have a board of education, with its members appointed and confirmed as prescribed by sec. 925—113, Stats., and no further action

was necessary to bring the school system under the city school plan; and it continued thereunder unless changed by some subsequent action which was legally effective to take the system out of the city school plan.

No such change was effected by ch. 177, Laws of 1909, to which plaintiffs refer. That enactment does not purport to automatically effect any such change. It provided merely that in certain classes of cities and under certain conditions, the existing plan of school-board organization and management should continue until changed by a majority vote of the electors of the school district. No such election was ever held in Crandon, and since 1910 no common-district school board has operated or been elected in Crandon. The raising of its school funds by taxation and the administration thereof has been by the city, and its clerk and treasurer acted in like capacity for its school system. On June 6, 1910, its common council enacted an ordinance which provided that "the territory of the city of Crandon is hereby organized into a school district to be known as 'The School District of the City of Crandon;' " and that "the schools in said district shall be under the control of a board of education, which board shall consist of one commissioner from each ward and three from the city at large, to be appointed by the mayor and confirmed by the common council," etc. As that was in accordance with statutory provisions which were applicable to the city upon its incorporation, and under which it was required to have the city school plan with an appointed board of education, the council's action was merely cumulative.

By ch. 243, Laws of 1919, the legislature amended sub. 8 of sec. 925—113, Stats., so as to provide that in cities in which the statutes required the schools to be under control of an appointed board of education, "the common council of any city of the fourth class, by ordinance adopted by a two-thirds vote of all its members-elect, may dispense with the

offices of the commissioners from the wards, and provide that such board of education shall consist of the three commissioners from the city at large." Other provisions in ch. 243, Laws of 1919, continued in effect the provision that the existing plan of school organization shall continue until changed by a majority vote of the electors. Under the option conferred by the above-quoted amendment by ch. 243, Laws of 1919, the common council of Crandon in June, 1919, adopted an ordinance reducing the city's board of education to three commissioners from the city at large to be appointed by the mayor and confirmed by the council. In 1927 the legislature enacted sec. 40.50, Stats. 1927, by which all fourth-class cities were brought automatically under the city school plan, which was to become effective July 1, 1928, excepting that "the members of school boards shall be elected the first Tuesday of the preceding April." The plaintiffs concede that at least from the time of that enactment in 1927, until the time of later amendments, which are hereinafter referred to, the city of Crandon was under the city school plan, by virtue of sec. 40.50, Stats. 1927. The plaintiffs claim, however, that records of the city council for this period reveal that the members of the school board were appointed by the mayor with the confirmation of the council just as before the enactment of the 1927 statute, and there is no record of any election by the people of the school district; and that, in other words, although the city of Crandon automatically became subject to the provisions of the city school plan by the 1927 statute, it never complied with the statute. Therefore plaintiffs contend that although the city came under the city school plan by virtue of the 1927 enactment, nevertheless, by reason of (1) its failure to hold an election pursuant thereto, and (2) legislative enactments in 1933 and 1937, the city's school system reverted to the status which it had prior to 1927; and which plaintiffs claim was the common school district plan under which the schools were operated prior to 1909.

These claims and contentions on the part of the plaintiffs cannot be sustained because of the following facts and statutes, even though it is true that the city never held an election of members of its board of education as required by the enactment of sec. 40.50, Stats. 1927. There was an amendment in 1933 of sec. 40.50, but that did not make any change in the particular plan or system of school organization which was then in effect in any fourth-class city. On the contrary, the following provision required every fourth-class city, whether it was operating under the city school plan or otherwise, to continue its prevailing system of school administration until it was changed by a vote of its electors, to wit:

"Every fourth-class city shall continue to constitute a common school district or operate under the city school plan, whichever system of school administration shall prevail on the effective date of this subsection, until changed as herein provided." Sec. 40.50 (2) (a), Stats. 1933.

And in that connection there was the following curative provision in the 1933 amendment, to wit:

. "No action heretofore taken by the school board of any such city shall have been invalidated by failure to comply with section 40.50 prior to the effective date of this subsection."

These amendments may have been enacted because apparently over one hundred fourth-class cities had paid no attention to the 1927 amendment of the statutes. (See Opinions of the Attorney General, vol. 24, p. 596.) At all events, the legislature by a provision in ch. 183, Laws of 1937, amended sec. 40.50, Stats. 1933, by adding to the first sentence in sub. (2) (a) thereof the words which are italicized in the following quotation:

"Any fourth-class city whose territory *now or any time hereafter,* constitutes all or part of one school district and which has at least eighty per cent of the entire population of such school district may proceed under sections 40.52 or 66.01 to adopt the plan of school administration provided

by sections 40.50 to 40.60, *or may operate or continue to operate under the common school district plan."*

Thus again the legislature left it optional with each city to proceed under the city school plan or operate under the common school district plan.

It follows that by reason of the provisions `in sec. 925—113, Stats., which were in effect and applicable to the unincorporated village of Crandon when it was incorporated in January, 1909, as a fourth-class city, its schools came under the city school plan with an appointive board of education, as provided in the statute and the city ordinance adopted on June 6, 1910; and that the city has at all times since continued legally to operate under the city school plan with the exception that it failed to comply in 1928 with the requirement which was inserted by amendment in sec. 40.50, Stats. 1927, that the members of its board of education should be elected by the electors of the city. However, in view of the enactment of sub. (1) of sec. 40.52, Stats., by ch. 256, Laws of 1929, Crandon's failure to comply with that requirement under sec. 40.50, Stats. 1927, did not cause its schools to revert, as plaintiffs claim, to the common school district plan under which they were operated in 1909. Sub. (1) of sec. 40.52, Stats., as enacted by ch. 256, Laws of 1929, provides that,—

"The school affairs of each city referred to in section 40.50 shall be managed by a board of education consisting of the same number of members and *selected in the same manner as such board was constituted and selected at the time of the taking effect* of this subsection. *Such board shall continue to be so* constituted and *selected until and unless changed* by referendum vote of the electors of such city as herein provided."

By virtue of this provision (which was considered applicable in *State ex rel. Thompson v. Beloit City School Dist.* 215 Wis. 409, 253 N. W. 598) the selection of members of the board of education in the manner in which they were

selected at the time sub. (1) of sec. 40.52, Stats. 1929, took effect was continued as the legal manner of selecting them until and unless the manner of selection was changed by a referendum vote of the electors. Consequently, as the members of Crandon's board of education were selected by appointment and confirmation when sec. 40.52 (1), Stats., went into effect in 1929, that manner of selection became the valid method until and unless changed by a vote of the electors; and, as there has not been any such vote or change, the appointed members of the board, which ordered and directed the razing of the building in question, were officers *de jure,* and the board's action was valid and effective.

Plaintiffs' further contention that the razing of the school was unauthorized although ordered and directed by the city council, as well as the board of education, cannot be sustained. Under sec. 40.53 (6), Stats., the title to all the school property vested in the city (see also *Manitowoc v. Board of Education,* 201 Wis. 202, 229 N. W. 652); and, as the razing of the building was ordered and directed by the common council, as well as its board of education, the trial court rightly concluded that the city acted within its power in ordering and proceeding with the razing of the school.

*By the Court.*—Judgment affirmed.