VILLAGE OF BAYSIDE, Respondent, vs. TOWN OF MILWAUKEE, Appellant.

*September 8—October 5, 1954.*

450

From the foregoing order the town of Milwaukee has appealed. Further facts will be stated in the opinion.

For the appellant there were briefs by *Wickert & Fuhrman* of Milwaukee, and oral argument by *Harold H. Fuhrman.*

For the respondent there was a brief and oral argument by *Suel O. Arnold* of Milwaukee.

CURRIE, J.  The following issues are raised on this appeal:

(1) Were the moneys in the rubbish-removal fund and the Utility District No. 2 fund apportionable assets under sec. 66.03, Stats.?

(2) Did the trial court err in holding that the proceeds of state income taxes, telephone-company taxes, motor-vehicle registration fees, and liquor taxes not yet received by the state treasurer as of February 13, 1953 (the date of incorporation of the village), but later distributed to the town, were apportionable assets under sec. 66.03, Stats.?

(3) If such proceeds of state taxes later distributed to the town in 1953 which had not been received by the state treasurer on February 13, 1953, were apportionable assets, are not a portion of the proceeds of such taxes distributable by the state to the village of Bayside during the year 1954, attributable to 1953, also apportionable assets in which the

town of Milwaukee is entitled to share inasmuch as the village was not incorporated during the first forty-four days of 1953?

(4) Inasmuch as the town is required to distribute to the village a proportion of the proceeds of state taxes received by it subsequent to February 13, 1953, should not the order appealed from have made provision for liabilities of the town incurred prior to February 13, 1953, but first ascertainable subsequent to the proceedings in the trial court but prior to the last distribution of proceeds of state taxes required to be made by one of said two municipalities to the other under the apportionment order?

(5) Did the order appealed from fail to make proper provision for first deducting the percentage of the distributable state liquor taxes received by the town, which the town was under contract to pay over to the city of Glendale, before apportioning the balance thereof?

(6) Was it an abuse of discretion for the trial court to have refused to interplead the city of Glendale?

The portions of sec. 66.03, Stats., entitled "Adjustment of assets and liabilities on division of territory," material to this appeal are as follows:

"(2) *Basis.* Except as otherwise provided in this section when territory is transferred, in any manner provided by law, from one municipality to another, there shall be assigned to such other municipality such proportion of the assets and liabilities of the first municipality as the assessed valuation of all taxable property in the territory transferred bears to the assessed valuation of all the taxable property of the entire municipality from which said territory is taken according to the last assessment roll of such municipality. . . .

"(5) *Apportionment board.* The boards or councils of the municipalities, or committees, thereof selected for that purpose, acting together, shall constitute an apportionment board. . . .

"(7) *Adjustment, how made.* The apportionment board shall determine, except in the case of public utilities, such assets and liabilities from the best information obtainable

and shall assign to the municipality to which the territory is transferred its proper proportion thereof by assigning the excess of liabilities over assets, or by assigning any particular asset or liability to either municipality, or in such other manner as will best meet the requirements of the particular case. . . .

"(8) *Appeal to court.* In case the apportionment board is unable to agree, the circuit court of the county in which either municipality is situated, may, upon the petition of either municipality, make the adjustment of assets and liabilities pursuant to provisions of this section."

In considering the first of the foregoing-listed issues it is also necessary to examine the statutes under which the Rubbish Removal District and Utility District No. 2 were created.

Sec. 66.049, Stats., authorizes cities and villages to create districts for the removal of ashes, garbage, and rubbish, and to defray the cost of such removal by special assessment against the property served, by general tax upon the property of the district, or by general tax upon the property of the city or village. Under the provisions of sec. 60.29 (30), a town board, if authorized by resolution at the town meeting, would have the power to create such a Rubbish Removal District in a town. No question has been raised but that the Rubbish Removal District with which we are concerned in this proceeding was validly created by the town board. The testimony is also undisputed that the owners of the property in the Rubbish Removal District had been assessed for the garbage-collection services rendered by the town in the district so that the moneys in the rubbish-removal fund had not been obtained by a general tax levied on all the property of the town but only on that of the district. As stated in paragraph 3 b of the trial court's order, 90 per cent of the boundaries of the Rubbish Removal District lie within the village of Bayside.

Sec. 66.072, Stats., authorizes towns to establish utility districts for providing highways, sewers, sidewalks, street lighting, and water for fire protection, or any of such services within the district, payable out of a fund provided by taxation of the property in such district. The trial court by its order found that the boundaries of Utility District No. 2 of Milwaukee are coterminous with the boundaries of the town.

The memorandum opinion filed by the learned trial judge makes it clear that he based his decision, that the moneys in the rubbish-removal fund and Utility District No. 2 fund constituted apportionable assets of the town, on the ground that the town board under the procedure outlined in sec. 65.90 (5) (a), Stats., could have diverted such moneys to any other general town purpose, and cited the decision of this court in *Milton Junction v. Milton* (1953), 263 Wis. 367, 57 N. W. (2d) 186, as authority therefor. We cannot agree with this conclusion. In the *Milton Junction Case* we were confronted with a situation where the town of Milton had taken town funds raised by general taxation and appropriated and set them aside for the purpose of constructing a community-building fund. In the instant case the moneys in the rubbish-removal fund and Utility District No. 2 fund had been raised by special taxes levied upon property in the districts. We are of the opinion that these two special funds constituted trust funds which could not be diverted to any other purpose by the town board acting under sec. 65.90 (5) (a). We construe sec. 65.90 (5) (a) as only applicable to the general funds of a municipality, and that the governing body of the municipality has no power to divert to other uses moneys impressed with a trust, such as those of the rubbish-removal fund and the Utility District No. 2 fund.

In *Hohl v. Westford* (1873), 33 Wis. 323, it was held that money belonging to a drainage fund of a town paid to the town treasurer continues to be in the town treasury in contemplation of law even though the town supervisors with-

out legal authority had illegally diverted such fund to another purpose. The legal effect of the trial court's order with respect to the rubbish-removal fund and the Utility District No. 2 fund is to divert approximately 36 per cent of the moneys in such two special funds into the general treasury of the village of Bayside with the power in the village board to divert the same to any general village purpose such board in its discretion might deem advisable, thus destroying the trust with which such funds are impressed. The case of *Montpelier v. East Montpelier* (1855), 27 Vt. 704, is authority for the principle that, where an additional town is carved out of an existing town, a statute providing for apportionment of assets does not apply to funds held by the original town in trust for a special purpose.

The legislature might well make provision with respect to the disposition of special funds created under secs. 66.049 and 66.072, Stats., collected by special taxes levied on property lying within districts established pursuant to those sections in the case of annexation of such property to another municipality, or the carving out of a new municipality lying wholly or partially within the boundaries of such a district. However, up to now the legislature seems not to have provided for such a contingency.

We now take up the second issue raised on this appeal, viz., whether it was error for the trial court to apportion all future state income taxes, telephone-company taxes, motor-vehicle registration fees, and liquor taxes received or to be received by the town from the state treasurer subsequent to February 13, 1953 (the date of incorporation of the village of Bayside), until such time as the state administrative records are conformed to the situation that the village and the town constitute separate and distinct municipalities and the village will receive its aids and refunds directly from the state. The town contends that only those taxes and fees already in the hands of the state treasurer on February 13, 1953, constituted

apportionable assets and any future taxes and fees collected by the state do not constitute "assets" within the meaning of sec. 66.03 (7), Stats. In support of such contention the town offered the testimony of one Leece, a certified public accountant, who testified that in order to have an asset in the nature of a receivable at a given date the receivable must be certain as of that date even though in some cases the amount might be determinable and payable as of subsequent dates. It was the opinion of the witness that only state taxes already in the possession of the state treasurer on February 13, 1953, met this definition of an "asset," so that any taxes received by the state treasurer after such date did not qualify as "assets" within the meaning of the apportionment statute, sec. 66.03.

Pursuant to sec. 71.14 (1) and (2), Stats., the state allocates approximately 50 per cent of income taxes collected to the municipalities of the taxpayers and distribution is made to the municipalities semiannually on May 15th and August 15th, representing taxes collected for the preceding year. Likewise, pursuant to secs. 76.28, and 76.29, 65 per cent of the public-utility taxes are distributed by the state to municipalities. Pursuant to secs. 20.49 (8) and (11), and 85.045, motor-vehicle license taxes are divided between the state, county, and the local municipalities. Pursuant to sec. 76.38 (7), the license fees based upon the local and rural telephone-exchange business are divided between the state and local municipalities, the latter receiving 85 per cent thereof, and allocation being made to the municipalities on June 15th. Pursuant to sec. 139.28, a certain part of all revenues derived from the occupational tax on intoxicating liquors are set aside to pay certain estimated administration costs, and one half of the balance thereof is distributed to the cities, towns, and villages in proportion to their population according to the last federal census.

As will be noted from paragraph 4 d of the order of the trial court, $47,441.89 of proceeds of income taxes were remitted by the state to the town on May 15, 1953, and $21,007.25 of such taxes were paid over on August 15, 1953. Neither the briefs nor the record on this appeal discloses what proportion of the remittance of income taxes made as of May 15, 1953, had already been collected by the state treasurer as of February 13, 1953, but we rather assume that the major portion of such taxes so remitted had been collected after February 13, 1953, and that all of the income taxes remitted as of August 15, 1953, had been received by the state treasurer subsequent to February 13, 1953.

The issue of whether that part of such state income taxes and other state taxes remitted to the town by the state subsequent to February 13, 1953, which had not been received by the state treasurer until subsequent to February 13, 1953, constituted apportionable assets would appear to be ruled adversely to the claim of the town by our decision in *Cassian v. Nokomis* (1948), 254 Wis. 94, 35 N. W. (2d) 408. In that case the town of Nokomis had been created out of part of the territory of the town of Cassian, and we quote the pertinent portion of the opinion in that case which we deem to be controlling here, as follows (p. 101):

"Although the payment of delinquent taxes and the receipt of federal, state, and county aids are only contingencies they are generally regarded as assets of a town. See *Owsley County Board of Education v. Owsley County Fiscal Court,* 251 Ky. 165, 64 S. W. (2d) 179, and *District Township of Jasper v. District Township of Sheridan,* 47 Iowa, 183. If they are based on the population, assessed valuation, number of miles of highways, residence of taxpayers, location of forest-crop land, number of motor vehicles, moneys paid for transporting high-school students, or other conditions existing before the division of the town, justice requires that the taxpayers in the new town receive their proportionate share."

In view of our conclusion that all state taxes received by the town subsequent to February 13, 1953, until such time as the state recognizes the village of Bayside as a separate municipality entitled to share in such taxes, constitute apportionable assets, we are now faced with the further issue of whether those state taxes received by the village in 1954 which were levied for the year 1953 also constitute apportionable assets in which the town is entitled to share. The town contends in the affirmative because the village was not in existence during the first forty-four days of 1953. This issue is apparently one of first impression and neither party has cited any authority that would assist the court in passing upon the question. However, inasmuch as such taxes were levied for the year 1953, it seems only equitable that $\frac{44}{365}$ thereof should be held to be apportionable assets as to which the town would be entitled to 63.93813 per cent thereof, and we so hold.

The fourth question raised on this appeal is whether the trial court's order makes proper provision for liabilities of the town incurred prior to February 13, 1953, but which do not become known until after the trial in the circuit court. The town contends that the order should provide for the deduction of such liabilities from the proceeds of future-collected state tax moneys apportionable under the court's order. The village, on the other hand, maintains that under paragraph 12 the trial court reserved jurisdiction to pass upon such future-ascertained liabilities. We do not so construe such paragraph because the jurisdiction so reserved only relates to *"such claims"* as had been previously referred to in the order, thus by implication excluding those then unascertained and thus not enumerated. We deem that the jurisdiction so reserved by the trial court should be extended to include any liability of the town attributable to the period ending February 13, 1953, which becomes known during the

time that either municipality is required to make payments to the other pursuant to the order.

Under date of December 28, 1950, the city of Glendale was incorporated in territory then comprising the southern portion of the town of Milwaukee. As previously mentioned herein, sec. 139.28, Stats., requires that the portion of state liquor taxes distributable to the local municipalities be distributed in proportion to their population according to the last federal census. Because both the city of Glendale and the village of Bayside were incorporated subsequent to the 1950 census the town of Milwaukee will receive the same amount of such state liquor taxes during the ten-year period of 1951 to 1960, as it would have received if Glendale and the village of Bayside had never been incorporated, and the last-named two municipalities will receive none. After the incorporation of Glendale the governing boards of the town and city agreed upon an apportionment of assets and liabilities. As part of such apportionment, a written agreement was entered into by the two municipalities, which, among other things, provided that the town would pay over to the city 55 per cent of all state liquor taxes received by the town based upon the 1950 federal census. The order appealed from fails to make mention of this or to make proper provision therefor. Paragraph 3 g of the order, instead of providing that state liquor taxes received by the town should be apportioned according to the percentages stated in paragraph 3, should have provided that only 45 per cent of such state liquor taxes received by the town should have been so apportioned so long as the liability of the town continues which requires it to pay to the city of Glendale the other 55 per cent thereof.

The town alleges as a further ground of error the refusal of the trial court to interplead the city of Glendale. Without passing upon the question of whether any interpleader is

authorized in a proceeding instituted under sec. 66.03, Stats., we cannot hold that it was an abuse of discretion for the trial court to have denied the request for interpleader.

While this court might by its mandate herein amend the order appealed from in the respects we have held the same to be erroneous, we deem it advisable to reverse and remand to the trial court for the purpose of drafting a new order in accordance with the general principles enunciated herein. The trial court is much more familiar than is this court with the intricate details of the complex situation involved in this proceeding, and therefore is better enabled to draft a proper order. Furthermore, there may have occurred further events in the meantime that might make it advisable in the discretion of the trial court to take further testimony and make findings with respect thereto in the new order.

*By the Court.*—Order reversed, and cause remanded for further proceedings in conformity with this opinion.