TOWN OF GREENFIELD, Appellant, vs. VILLAGE OF WEST MILWAUKEE, Respondent.

*February 6—March 6, 1956.*

216

218

220

221

222

223

224

For the appellant there were briefs and oral argument by *Laurence C. Gram,* special counsel, of West Allis.

For the respondent there were briefs by *Maxwell H. Herriott,* special counsel, and oral argument by *Mr. Herriott* and by *Mr. Allen J. Busby,* both of Milwaukee.

FAIRCHILD, C. J.   There is no dispute in the proceeding on appeal here as to the validity of the annexations involved. Appellant town advances as its two chief contentions: First, that sec. 66.03, Stats., is not applicable to the situation existing in the instant case; second, that the respondent village, in any event, has barred itself by laches from the division of assets and liabilities which it seeks.

As to its first contention, the town argues that sec. 66.03, Stats., is a general statute which merely sets up machinery for carrying out the provisions of certain special statutes which specifically invoke sec. 66.03, and calls attention to sec. 60.06 (5), pertaining to division of credits and liabilities when a new town is created; sec. 61.17, pertaining to division of joint property when a new village is created; and sec. 60.31 (2) (b), pertaining to division of assets when a part of a sanitary district is annexed to a village or city. It is maintained that because those sections specifically invoke the application of sec. 66.03, if the legislature had intended sec. 66.03 to apply to annexation of a portion of a town to an already existing municipality, it would, in the same manner, have specifically invoked sec. 66.03 in the annexation statutes. Thus, the town claims that sec. 66.03 does not apply to a situation in which a portion of a municipality, such as the town of Greenfield, is annexed to an already existing municipality, such as the village of West Milwaukee.

Prior to the commencement of this proceeding, except in school-district cases, sec. 66.03, Stats., has never been re-

sorted to by any already existing municipality upon annexation to it of a portion of another municipality. The problem confronting us here with reference to the applicability of sec. 66.03 did not have to be dealt with in *Cassian v. Nokomis*, 254 Wis. 94, 35 N. W. (2d) 408, or in *Bayside v. Milwaukee*, 267 Wis. 448, 66 N. W. (2d) 129. Those cases concerned situations in which an entirely new municipality was created from a portion of an old one, and there was no question but that sec. 66.03 was applicable, because it was invoked by specific statutes governing those situations.

Appellant, further arguing that sec. 66.03, Stats., could not have been intended to apply to every case where the territory of one municipality is transferred to that of another municipality, points out that in the event of an annexation to a village of a portion of a town there is no division of assets of the school district. In such a situation it is provided by statute that there shall be no change in the boundaries of a school district. A school district is a distinct and separate municipal entity. If there is no change in its boundaries, no territory of the school district has been transferred, but it remains the same, and sec. 66.03, providing for a division of assets and liabilities "when territory is transferred . . . from one municipality to another" has no bearing upon the situation. There has been no division of the territory of the school district. However, as appellant points out, sec. 66.03 *does* apply when an annexation is made from a town to a city, because in that event the boundaries of the school districts involved are changed. It is noted that in spite of the fact that there is no specific statute invoking sec. 66.03 in such an event, and contrary to its contention that there must be such a specific statute in order that sec. 66.03 may be applied, appellant concedes that sec. 66.03 does apply to school districts where a portion of a town is annexed to a city.

In *State ex rel. Thompson v. Beloit City School Dist.* 215 Wis. 409, 417, 253 N. W. 598, Mr. Chief Justice Rosen-

BERRY, referring to *Town of Milwaukee v. City of Milwaukee,* 12 Wis. *93, pointed out that:

". . . there is a limitation upon the power of the legislature to abolish municipal corporations and to annex the property of the dissolved corporation to another municipal corporation *without provision for a fair and equitable distribution of its property and liabilities.* . . . It was there held that while such a corporation is subject to control, change, and even destruction, so far as its public function is concerned, it held its property as does any individual, and that these property rights must be fairly and equitably provided for in whatever changes are made in its franchises; that in default of this the corporation retains such entity as is essential to vindicate these property rights. *In response to this decision a* section was added to the statutes intended to provide a scheme to *equitably distribute and to adjust property rights and debts* in such a situation."

In the case of *Town of Milwaukee v. City of Milwaukee, supra,* it was held that no division of property was required under common law, and the court in that case said (pp. *110, *111):

". . . still the inhabitants of the city, by procuring it to be incorporated as such, without any provision as to the land, and by an acquiescence of six years and upwards, must be presumed to have released their interest in it, and to have consented that it remain the sole property of the town as it was after such division. . . . By incorporating the city, without dividing the land, it became the sole property of the town; and, *if such effect was inequitable,* it was not in the power of the legislature, without the consent of the town, afterwards to remedy the evil."

If, then, as stated in the *Thompson Case,* the legislature "in response to that decision" enacted sec. 944, Stats. 1898, in an effort to overcome possible inequities such as referred to in the *Town of Milwaukee Case, supra,* and to provide a fair and equitable distribution in such situations, the legisla-

ture must have contemplated from the beginning circumstances involving the annexation of a portion of a municipality to an already existing municipality. In that respect, the situation in the instant case is the same as it was in that early case which provoked or led to the act of 1898.

In 1921, sec. 944, Stats. 1898, was repealed, and, by sec. 4 of Bill No. 22, S., ch. 396, Laws of 1921, sec. 66.03 was created in substantially its present form. The purpose of the 1921 enactment is clearly stated in the revisor's note as follows:

"Uniform system is here substituted for the numerous repetitions of detail now in the statutes. The same principle of adjustment is provided in all cases by the various sections here consolidated, and the present system, provides one . . . procedure for all cases, in language sufficiently general to cover all cases." See Wis. Anno. (1930), p. 421.

The plain language of the statute directs that "when territory is transferred, in any manner provided by law, from one municipality to another, there shall be assigned to such other municipality, etc." Furthermore, sec. 66.03 (9), Stats., expressly refers to the detachment from a municipality "by creation of a new municipality *or otherwise*" and requires the transcript of records in respect to the detached territory to be delivered "upon demand by the proper officer of the municipality created from the detached territory *or to which it is annexed.*"

Further, as stated in the *Thompson Case,* at page 414: "The statute itself is so clear as not to create any ambiguity calling for rules of construction." At page 418 of that same decision the following language occurs:

"The scope of the section is indicated in sub. (2), which provides that the section shall operate in every case where territory is transferred from one municipality to another, . . .

"It is obvious that the existence of sec. 66.03 destroys the force of the argument that the application of ch. 425 to the Beloit situation would produce an unconstitutional or an absurd result. It may be supposed that the legislature, having already by general law provided for the apportionment of property and debts in sec. 66.03, would not consider it necessary to expressly provide for the matter."

Sec. 66.03, Stats., then, embraces substantive as well as procedural law; and the trial court adhered to the provisions therein both in granting to the village its right to a division of assets and liabilities sought and in making the apportionment in accordance with the method fixed by the statute.

The sum of $1,000 as the village's proportion of assets under the 1951 annexations is not in dispute. The trial court adopted the estimated proportion computed by the town's accountant. Both the village accountant and the town accountant in their computations of net assets (Ex. 2, sec. 1, and Ex. 2, sec. 2, respectively) show the assessed valuation of the town of Greenfield as of May 1, 1950, to be $67,394,032, and the assessed valuation of the property annexed to the village of West Milwaukee on the September annexation dates to be $27,717,747 and determine the apportionment percentage to be 41.12789% to the village. These figures were adopted by the court, and the percentage of apportionment is the statutory percentage.

The dispute is over the amount of the town assets apportionable under the September, 1950, annexations. The village fixed September 30, 1950, as the date for computing the assets; the town computed its assets as of March 31, 1950. The court determined September 30, 1950, as the proper date for computing the assets. Taking the figures as of that date computed by the village accountant, he determined that the net assets attributable to the general-fund surplus, *i. e.*, the excess of the general fund over liabilities, were $596,906.34. The town accountant claimed two corrections by way of items reducing those assets (Ex. 25, p. 12): (1) Liability

to state of Wisconsin for 1949 assessment services not paid until April, 1951; (2) liability for sewer-construction projects completed or in progress September 30, 1950. Although the village accountant did not agree to the latter claim, the trial court allowed both reductions, aggregating $44,179, and found that the general-fund surplus for distribution was $552,727.34.

In the town's apportionment data, the town accountant reported unrecorded fixed assets (land, buildings, and equipment) on hand at the time of the 1950 annexations to be $59,310 (Ex. 25, p. 7). He also reported $40,875, the adjusted total for apportionment purposes of recorded net assets for a new addition to the town hall. The town accountant failed, however, to include in his report certain assets of equipment purchased by it between April 1, 1950, and September 30, 1950, but the testimony of the village accountant, from a check of the annual reports of the town, was that such equipment cost $8,218.14. This testimony was not disproved by any testimony of the town witnesses. The trial court, taking the lowest depreciated value of the unrecorded assets of land, buildings, and equipment computed by the town accountant ($59,310), adding the recorded net assets of land, buildings, and equipment as adjusted by the town accountant ($40,875), and further adding the cost of the equipment testified to by the village accountant ($8,218.14), found the value of the buildings, machinery and equipment, and lands to be $108,503.14.

As to accrued assets from state aids and state-distributed taxes, the village accountant, upon investigation, determined these to amount to $545,345.71 as of September 30, 1950. The town accountant reviewed the computations of the village accountant and found no fault with them mathematically. The trial court adopted the figure determined by the village accountant:

"The court in its order will consider accrued state aids and state-distributed taxes as of September 30, 1950, in the

amount of $545,345.71 as an apportionable asset under the authority of the cases of *Cassian v. Nokomis,* 254 Wis. 94, and *Bayside v. Milwaukee,* 267 Wis. 448."

As was contended in *Bayside v. Milwaukee, supra,* the town here contends that any taxes and fees collected by the state after the date of annexation do not constitute assets within the meaning of sec. 66.03 (7), Stats. The *Bayside Case* has conclusively decided that issue. At page 459, Mr. Justice CURRIE stated:

"The issue of whether that part of such state income taxes and other state taxes remitted to the town by the state subsequent to February 13, 1953 [date of incorporation], which had not been received by the state treasurer until subsequent to February 13, 1953, constituted apportionable assets would appear to be ruled adversely to the claim of the town by our decision in *Cassian v. Nokomis,* (1948), 254 Wis. 94, 35 N. W. (2d) 408. In that case the town of Nokomis had been created out of part of the territory of the town of Cassian, and we quote the pertinent portion of the opinion in that case which we deem to be controlling here, as follows (p. 101):

" 'Although the payment of delinquent taxes and the receipt of federal, state, and county aids are only contingencies they are generally regarded as assets of a town. See *Owsley County Board of Education v. Owsley County Fiscal Court,* 251 Ky. 165, 64 S. W. (2d) 179, and *District Township of Jasper v. District Township of Sheridan,* 47 Iowa, 183. If they are based on . . . conditions existing before the division of the town, justice requires that the taxpayers in the new town receive their proportionate share.' "

The town concedes that the department of taxation properly allocated to the village its one-fourth share of the 1950 levy of income to be allocated, that being the share due the village from October 1, 1950, to December 1, 1950. However, the town contends that such share having been allocated to the village, the village is not now entitled to an additional share by apportionment. This matter is well settled in the

*Bayside Case,* where it was held, page 460, that "all state taxes received by the town subsequent to . . . [the date of incorporation], until such time as the state recognizes the village of Bayside as a separate municipality entitled to share in such taxes, constitute apportionable assets, . . ." In the instant case, the date of annexation, September 30, 1950, coincided with the date on which the state recognized the transfer of the annexed territory for tax purposes. Taxes collected from and remitted to the village after that date have no bearing upon the apportionable assets of the town as of September 30, 1950. As was stated by the trial court, "The distribution to the village pursuant to sec. 71.14 of a portion of the 1950 income taxes of residents and taxpayers of the annexed territory did not involve or foreclose an apportionment of town assets pursuant to sec. 66.03."

The village further contends that a claim filed with the Wisconsin department of taxation on May 14, 1954, for a share of the 1950 income taxes allocated to the town was a collateral attack on the allocation made in 1951. That claim was an alternative claim pending the outcome of this proceeding. The filing of the claim in no way affects the validity of the trial court's order, and the accrual-of-assets theory, and the court order of July 7, 1955, is not a collateral attack on such tax allocations as made by the Wisconsin department of taxation for 1950, even though the village did not protest the said allocations when made in 1950 and 1951.

The second contention of the appellant town is that the respondent village is barred from relief by laches. Respondent contends that laches cannot be pleaded as a defense in the present action because of the rule that laches bars only suits solely cognizable in equity, and that such doctrine does not apply to actions at law, especially those based on rights created by statute, as here. However that may be, the appellant has pleaded laches, and we will consider that defense here. The elements of the defense of laches are (1) unrea-

sonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and (3) prejudice to the party asserting the defense in the event the action is maintained. 19 Am. Jur., Equity, p. 343, sec. 498; 30 C. J. S., Equity, pp. 531, 540, secs. 116, 118. The question as to whether the elements of laches have been established is one of fact, and we find no such facts established in the record.

There was no unreasonable delay in calling the meeting of April 30, 1952. The decision affirming the validity of the annexations was not entered until March 28, 1951. The time for appeal from that judgment would not have expired until at least the fall of 1951. The appellant admits the creation of the apportionment board; the notice of the meeting and the holding of the meeting,—all pursuant to sec. 66.03, Stats. The appellant town could have commenced an action in the circuit court under sec. 66.03 (8) as soon as it was aware of the fact that the apportionment board could not agree. Its claim that such an action would have conceded the jurisdiction of the court to apply sec. 66.03 has no foundation.

Appellant was advised by the village that it was claiming apportionment under the decision of the *Cassian Case*. It cannot be claimed by the town that it lacked knowledge of the size of the village's claim, because all the data for determining the amount of the claim appeared in the town records, audited by the town's accountant. The town counsel at the argument conceded:

"I admit that in the record there is nothing to show that when that [presentation of the village accountant's report to the apportionment board] was raised they were shocked and so on."

The further contention of the town that it has been prejudiced is unsupported by the facts. The assertion that a property-tax levy, if necessary to pay the village, would not reach town taxpayers who, since 1950, have departed by

annexation or municipal incorporation is not persuasive. The town liability to the village established in this proceeding as of September 30, 1950, is an apportionable liability in apportionment proceedings. Sec. 66.03 (2), Stats., specifically provides that liabilities as well as assets are to be apportioned, and sec. 66.03 (7) recognizes that the municipality to which a liability is assigned may, in appropriate cases, be required to levy a property tax for payment thereof. It has been held by this court that the legislature having prescribed the method of ascertaining the liabilities of the respective municipalities, the remedy under sec. 66.03 is "exclusive." *Emery v. Worcester*, 137 Wis. 281, 118 N. W. 807; *Wauwatosa v. Union Free H. S. Dist.* 250 Wis. 266, 271, 26 N. W. (2d) 535.

*By the Court.*—The village of West Milwaukee being entitled to the relief granted in the circuit court, the ruling is in all things affirmed, and the cause is remanded with directions to enter an interlocutory judgment in respect to those issues there determined and for further proceedings according to law.