Estate of Seefeldt: Schultz, Executor, Respondent, vs. Kuerschner, Appellant.

*September 10—October 8, 1957.*

510

For the appellant there was a brief by *Dakin & Dierker* of Watertown, and oral argument by *Roland F. Dierker*.

For the respondent there was a brief by *Schultz & Slechta* of Jefferson, and oral argument by *J. M. Slechta*.

There was also a brief and oral argument by *Richard C. Thauer* of Watertown, guardian *ad litem*.

CURRIE, J. The following issues are raised by the appellant on this appeal:

(1) Was the policy upon the life of the surviving partner a partnership asset and therefore covered by the executor's bill of sale to Kuerschner?

(2) If not a partnership asset, may the executor rescind the release of assignment and the reassignment of the policy to Kuerschner thus taking advantage of his own unilateral mistake?

(3) Was the executor guilty of laches so as to bar him from obtaining the relief sought in this proceeding?

As to the first issue, the trial court made a definite finding that the policy in question was an asset of the estate not covered by the executor's bill of sale whereby the decedent's interest in the partnership assets was transferred to the surviving partner, Kuerschner. This court must sustain such finding on this appeal unless it is against the great weight and clear preponderance of the testimony. *Estate of Hill* (1956), 272 Wis. 197, 213, 75 N. W. (2d) 582.

The appellant's brief concedes it to be a fact that the purpose of Kuerschner and Seefeldt in taking out the two policies of life insurance was so that, upon the death of one of them, the survivor might use the proceeds to purchase the decedent's interest in the partnership. Until one of the partners died, it would be impossible to tell which of the two policies would be the one which would be employed for

such purpose. Such objective would be defeated if the policies constituted partnership assets. This is because, if the policies were partnership assets, then upon the death of the first partner to die, the proceeds realized upon the policy covering the decedent's life would be payable into the partnership treasury, and would not be usable by the survivor for the purpose of purchasing the decedent's interest in the partnership.

Furthermore, the act of the survivor, Kuerschner, in treating the proceeds of the policy on Seefeldt's life as belonging to Kuerschner and not the partnership, is an act of practical construction on his part which strongly tends to support the trial court's finding of fact as to the ownership by Seefeldt's estate of the other policy on Kuerschner's life. This is because of the inescapable inference that either both policies constituted partnership assets, or neither did.

It is, therefore, our conclusion that there was ample evidence to support the learned trial court's finding as to the ownership of the policy in question.

It is the position of the appellant Kuerschner that the executor's attempted rescission of the release of assignment dated July 18, 1955, is predicated upon the ground that he executed the same through mistake. The appellant further contends that such remedy is not available when the mistake is unilateral in character because the party guilty of a unilateral mistake cannot avail himself of such mistake as against the other party. In passing on this phase of the appeal we will assume, without deciding the point, that the mistake was unilateral in nature and not mutual.

This argument advanced by the appellant overlooks the fact that the party seeking rescission in the instant case was acting in a fiduciary capacity when he committed the mistake. As a result of the mistake an asset of the estate was conveyed away by the executor without any consideration whatever. One dealing with a fiduciary, such as an executor, is bound

to know that such fiduciary cannot legally transfer title to assets held in a fiduciary capacity without receiving any consideration therefor. 33 C. J. S., Executors and Administrators, p. 1168, sec. 188, states:

"The executor or administrator has no right to give away any assets even though of trifling value, nor will the law give effect to such transfer."

3 Scott, Trusts (2d ed.), p. 2151, sec. 284, states that it became established in English law that if a trustee transfers trust property to one who gives no value therefor, the transferee takes subject to the trust. We deem such principle to be equally applicable to the transferee without value of estate property from an executor or administrator.

We also consider in point the following statement made by the Maryland court in *Park & Tilford Import Corp. v. Nash* (1934), 166 Md. 373, 385, 171 Atl. 339:

"Mere inadequacy of price, however, standing alone, is not sufficient to vacate a sale, unless it be so gross and inordinate as to indicate some mistake or unfairness in the sale, for which the purchaser is responsible, or misconduct or fraud on the part of the trustee making the sale. [Citing authorities.]"

Where, as in the instant case, the transferee paid the executor nothing for the transfer, it clearly indicates a mistake was made. Kuerchner, as the transferee, cannot escape some responsibility for the mistake because it was either he, or his agent, who requested the executor to execute the release and reassignment of the policy. However, even without any responsibility by the transferee for the mistake, we are satisfied that the fiduciary may repudiate the transfer where no consideration is received for the asset transferred. An executor or administrator acts in a representative capacity, and the legatees or heirs of the estate should not be penalized for the executor's or administrator's mistake in a situation where

the party, who deals with such personal representative, is under the duty to know that assets of an estate may not be conveyed away without consideration.

The last issue to be considered is whether the executor is precluded from prevailing in this proceeding because of laches. The appellant bases his contention of laches upon the fact that the executor delayed approximately thirteen months in instituting the within proceeding against Kuerschner after discovery by the executor of his mistake in executing the release and reassignment. In *Greenfield v. West Milwaukee* (1956), 272 Wis. 215, 232, 75 N. W. (2d) 424, this court stated:

"The elements of the defense of laches are (1) unreasonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and (3) prejudice to the party asserting the defense in the event the action is maintained. 19 Am. Jur., Equity, p. 343, sec. 498; 30 C. J. S., Equity, pp. 531, 540, secs. 116, 118."

Whether the executor was guilty of unreasonable delay in instituting the proceeding is debatable. However, the burden is on the appellant to establish that he was prejudiced by such delay. There is a complete want of any evidence of prejudice to the appellant by reason of such delay, and, therefore, one of the essential elements of laches is entirely lacking.

*By the Court.*—Order affirmed.