STATE EX REL. REYNOLDS, Attorney General, Petitioner, vs.
SANDE, Mayor, and others, Respondents.

*September 15—October 13, 1931.*

496

For the petitioner there were briefs by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Roger R. Tuttrup*.

For the respondent Helen K. Stuart there was a brief by *Mitchell & Krueger* of Oshkosh, and oral argument by *Lloyd D. Mitchell*.

*John W. O'Leary*, attorney for all other respondents, and city attorney of Neenah, and *John C. Thompson* of Oshkosh of counsel.

FAIRCHILD, J.  The sole question to be determined is the constitutionality of ch. 392 of the Laws of 1931.  The particular proceeding asks for the relief provided for in sec. 5 of the act, governing the selection of a judge pending the regular election, and this section places upon the common councils of the cities of Neenah and Menasha the responsibility for this election.  The legislature has no authority to provide for the selection of a judge in this manner.  The concrete proposition which presents itself here was considered in *In re Burke*, 76 Wis. 357, 45 N. W. 24, where the matter of the appointment of a judge for the municipal court of Ashland was under consideration.  The act in that

instance became effective March 15, 1889, and provided for the election of a judge on the first Tuesday of the following April, at which time the judge was elected to take office the first Monday of January, 1890. Two days after the election the governor appointed the successful candidate judge of said court to hold office until the first Monday in January, 1890. It was there claimed on the authority of *State ex rel. Attorney General v. Messmore,* 14 Wis. *163, that the governor had no authority to make such appointment. The court there said:

"For the purposes of this application it will be assumed that he had not. It should be observed, however, that this application is not necessarily ruled by the *Messmore Case,* for the appointment in that case was to the office of circuit judge, and the case was decided upon certain constitutional provisions which may not be entirely applicable here."

Sec. 10, art. XIII, of the constitution refers to other offices than that of circuit judge and reads:

"The legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this constitution."

The action of the legislature with relation to vacancies mentioned in the section just quoted appears in sec. 17.03, Stats., and is confined to death of incumbent, resignation, removal, ceasing to be an inhabitant of the state or district, conviction and sentence for certain offenses, when the position is declared vacant by reason of void election, insanity of the incumbent, neglect or refusal to file official oath, or on the happening of any event which is declared by law to create a vacancy. Mr. Chief Justice Dixon in *State ex rel. Attorney General v. Messmore, supra,* writing for the court, said:

"The clause which gives the legislature power to declare the cases in which any office shall be deemed vacant . . . clearly confers no authority by direct act to declare a par-

ticular office vacant. The legislature can only by general laws declare under what circumstances existing offices shall be deemed vacant."

In the absence of proper legislation, an attempt to provide for the selection of the judge otherwise than by an election by the qualified electors of the jurisdiction to be served is void. Sec. 2, art. VII, Const.

Since the invalidity of sec. 5 of the act in the respect above indicated would not affect the validity of the enactment as a whole but merely postpone the time for the coming into operation until a proper election could be held, and since the enactment must be held to be void for reasons hereafter set forth, no further discussion of this provision is required; nor do we deem it necessary to consider the objection to the validity of sections which may affect the rights of parties in case an appeal be taken from judgments formerly within the jurisdiction of a justice of the peace to the supreme court.

If all the sections are given their full meaning, then the legislature has attempted to create a court with jurisdiction within the limits of the county of Winnebago, and the plain language of the act indicates that they had in mind the creation of an inferior court, because the nature and extent of the powers and duties imposed under the wording of the act makes this court an inferior court as distinguished from a municipal court. When the process of such a court may be sent throughout the state that court is an inferior court notwithstanding the act creating it calls it a municipal court. *French v. L. Starks Co.* 183 Wis. 345, 197 N. W. 726. A court is characterized by the powers conferred upon it by the legislature rather than by the name applied to it; both are important when questions of interpretation are being considered; but the name will not, in and of itself, limit or increase the jurisdiction.

Considerable attention and study has been given the suggestion of relator that sections of the act conferring jurisdiction beyond the corporate limits of Neenah and Menasha do not necessarily show intention to create any but a municipal court for the cities of Neenah and Menasha. The word "county" is deliberately placed in the statute, so that its natural meaning and effect is to extend the jurisdiction of the court beyond the municipalities. We are so to construe as not to void a legislative enactment whenever by any fair interpretation its words may be so construed as to serve a constitutional purpose. But can we say the wording of the sections fixing the jurisdiction of the court was not intentionally framed, just because a mistake has been made, when by following the meaning of the words of these sections the law becomes void?

Sec. 24 reads in part: .

"The municipal court shall have and exercise powers and jurisdiction in all civil actions within the said cities and county of Winnebago, both in law and in equity. . . . Actions for the foreclosure of mortgages or in proceedings under chapter 289, Statutes of 1929, in which the amount claimed does not exceed the sum aforesaid [that is, $50,000], although the value of the property to be affected by the judgment exceeds that sum, and shall also have and exercise powers and jurisdiction within said county and cities of Neenah and Menasha concurrent with and equal to the powers and jurisdictions of the said circuit court in *certiorari* proceedings. . . ."

Sec. 26: "The municipal court and judge thereof shall have power and jurisdiction equal to and concurrent with the circuit court and the several justices' courts within the county and cities of Neenah and Menasha to enter judgment by confession."

Sec. 40 (b): "Except as in this act otherwise specifically provided, said municipal court shall have all of the powers, issue all writs, orders and process throughout the state and follow the rules of pleading and procedure applicable in the

circuit court, in the trial of all circuit court actions, whether on appeal, information or originally commenced by process of the form used in circuit court."

The relator's counsel readily concedes "that so much of the act as purports to confer upon the newly created municipal court jurisdiction of actions other than justice court actions arising without the corporate limits of Neenah and Menasha, or wherein the actions are local and the subject thereof situated without said corporate limits, is void." This supports the proposition that if these concededly invalid portions of the law cannot be separated from the rest of it, the whole law is void. The void portion of sec. 5 which has been discussed is separate; its elimination by judicial construction does not affect the validity of the balance of the act. It is consistent with the legislative intent with relation to the creation of the position it was designed to provide a way to fill; but we are confronted with a somewhat different situation when confronted with the sections quoted. If the legislature intended to create a municipal court for the two cities, it has unconstitutionally included in its jurisdiction territory and proceedings over which it cannot have jurisdiction; and unless these can be eliminated by judicial construction, the act is void. If it was the intention to create a court with broader jurisdiction and wider powers, it has failed to meet the requirements of the constitution by limiting the election of the judge to the electors of the cities of Neenah and Menasha to the exclusion of the electors of the balance of the territory within the jurisdiction. Sec. 2, art. VII, Const.

If a municipal court is to be considered to be created by the act, then there are concededly invalid portions forming a part of the enactment. These concededly invalid parts appear frequently enough in its structure, in such positions and so related to the subject of the act as to refute in some degree

the claim in behalf of a municipal court and to indicate an intention on the part of the legislature to give the court jurisdiction over matters arising outside of the cities of Neenah and Menasha. There is no other way to account for the word "county" in sec. 24, where it appears to have been carefully inserted to grant to the court "powers and jurisdiction in all civil actions within the said cities and county of Winnebago." Were it intended to create only a municipal court for the two cities, how can the use of language, by the legislature, plainly giving this court unlimited jurisdiction in divorce cases within said county, be justified? Similar questions may be asked with relation to other sections, few in number, but important in an analysis of the enactment. At least it is not certain that the legislature did not intend to create a court with wider jurisdiction than it would have if the parts discussed were removed. Courts cannot go beyond the province of legitimate construction in order to save a statute, and where the meaning is plain, words cannot be read into it or out of it for the purpose of saving one or the other possible alternative. *Rogers-Ruger Co. v. Murray,* 115 Wis. 267, 91 N. W. 657. If a statute consists of separable parts and the offending portions can be eliminated and still leave a living, complete law capable of being carried into effect "consistent with the intention of the legislature which enacted it in connection with the void part," the valid portions must stand. This is the rule and it has been consistently followed. *Atkins v. Fraker,* 32 Wis. 510; *Attorney General v. Eau Claire,* 37 Wis. 400; *Zitske v. Goldberg,* 38 Wis. 216; *French v. L. Starks Co.* 183 Wis. 345, 197 N. W. 726. But as said in 1 Lewis's Sutherland on Statutory Construction (2d ed.) § 305:

"One part of a statute may be distinct in the text and literally separable from the rest and yet be indissolubly connected with it in the legislative intent. The mere fact that

one part standing alone would be within the scope of legislative power does not necessarily prove that it can be upheld when coupled with other matter."

The pertinent question therefore becomes: Is it certain the legislature would have attempted to create this court had it been of the opinion that its service would be limited as it must be if held to be a municipal court for the cities of Neenah and Menasha? In answering this question we must have in mind that the court attempted to be created is to have a judge who is to devote his full time to the affairs of his office; he is denied the privilege of engaging in the practice of law during the time he is acting as such judge; the court is to have a clerk, reporter, jurors, and all the attendant details of a court of considerable power and dignity and necessarily involving considerable expense in its operation.

It seems as reasonable to conclude that if the legislature intended to place that burden of expense it also intended to have a service which would be commensurate therewith and that a greater service to a community such as the combined cities of Neenah and Menasha may be found in a court with the greater jurisdiction. It is an accepted rule of construction, perhaps the converse of the one already stated, that if there appears to be reason from the act itself for the conclusion that the legislature intended it as a whole, and would not have enacted the part which is valid, alone, when a part is unconstitutional the parts are not separable; in that instance if one is void the whole is void. 1 Lewis's Sutherland on Statutory Construction (2d ed.) § 307.

The confusion arising from the drafting of this bill becomes apparent. In this act two plans, one for the creation of a municipal court and the other of an inferior court, are so intermingled that it is impossible to say which of the two the legislature intended to create. In order to meet the requirements of the constitution in the framing of a law

creating either a municipal court or one of wider jurisdiction, the law must be rewritten. This result cannot be accomplished by judicial construction.

*By the Court.*—Motion to quash the alternative writ of *mandamus* is granted.

Rosenberry, C. J. (*concurring*). Ch. 392 of the Laws of 1931 attempts to confer upon the municipal court of Neenah-Menasha the jurisdiction of a justice of the peace and also that of the circuit court in certain classes of action. Sec. 35 contains the following provision, after providing for appeals from judgments of the municipal court in all civil and criminal actions and proceedings tried according to justice court procedure, to the municipal court of Oshkosh:

"Provided, that in civil cases, at appellant's option, a bill of exceptions of the evidence and the rulings of the judge may be settled within thirty days after judgment in like cases and in like manner as in the circuit court, and when so settled an appeal may be taken direct to the supreme court within sixty days after judgment in like manner and with like effect as from a circuit court. An appeal to either court shall be a waiver of the right of appeal here given to the other court, but not of the right of appeal from the circuit court to the supreme court after trial of the appeal in the circuit court."

Appeals to this court in justice court actions involve a matter of public policy which should receive the careful and serious attention not only of the legislators but of those who promote the enactment of legislation of this character. The section apparently enlarges the right to appeal to the supreme court, making the right dependent upon an option to be exercised by the appellant. It was felt that a long step was taken when appeals were authorized directly from the county court, and in at least two cases where there were appeals from county courts the question raised on appeal from the county court could not be determined on account of insufficiency of

the record. A justice court is not a court of record. Courts sitting as a justice court therefore do not make a record, and appeals from such courts upon a record subsequently made up are certainly a questionable extension of the right of appeal. The judicial scheme provided by the constitution contemplated an appeal from justice court to the circuit court and from the circuit court to this court. For many decades appeals lay solely from the county court to the circuit court.

Attention is called to this matter not in any spirit of criticism but for the purpose of directing attention to the situation which will be created if direct appeals to this court are allowed in what are really justice court cases.