IN RE ADOPTION OF MORRISON: JONES and others, Appellants, vs. MANESEWITZ and wife, Respondents.

*October 4—November 9, 1954.*

627

628

For the appellants there were briefs by *Fairchild, Charne & Kops* of Milwaukee, and oral argument by *Thomas E. Fairchild*.

For the respondents there was a brief by *Shaw, Muskat & Paulsen* and *Eldred Dede,* attorneys, and *John G. Quale* of counsel, all of Milwaukee, and oral argument by *Mr. Martin R. Paulsen, Mr. Quale,* and *Mr. Dede.*

BROWN, J. Appellants submit that sec. 322.04 (9) (b), Stats., should be construed to avoid doubts of its constitutionality and to avoid interference with the rights of natural parents. On the other hand, it is a fundamental of statutory construction that a regularly enacted statute is presumed to be constitutional and the party attacking it has the burden of

overcoming the presumption and showing it to be unconstitutional. *State v. Stehlek* (1953), 262 Wis. 642, 645, 56 N. W. (2d) 514. Appellants contend that sub. (9) (b) is unconstitutional because by it the legislature attempted to exercise judicial power and because it deprives them and their child of remedies guaranteed by sec. 9, art. I, Wis. Const., and of the rights which they have as parents and child without due process of law contrary to the guaranty of the Fourteenth amendment, U. S. Const. In *Adoption of Morrison* (1951), 260 Wis. 50, 59, 60, 49 N. W. (2d) 759, 51 N. W. (2d) 713, we quoted with approval from 1 Am. Jur., Adoption of Children, p. 623, sec. 4:

" '. . . it is admitted that a parent has no vested right in his child which requires the protection accorded to property rights.  In order to be constitutional, however, adoption statutes must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents or *that it is manifestly to the interest of the child that it be taken from their custody by some judicial proceeding of which they had notice.*' "

The "consent of the parents" so referred to is the consent of the mother, alone, when the child is illegitimate, for at common law such a child had no father known to the law, 7 Am. Jur., Bastards, p. 627, sec. 3, and our statutes have not conferred the privilege of being consulted upon the father. On the contrary, ". . . The consent of the father of an illegitimate child is not required in any case, . . ." Sec. 322.04 (1), Stats. We held in *Adoption of Morrison, supra* (pp. 63, 64), that George's mother had given her consent and could not withdraw it before the court had entered the order of adoption and that ". . . the determining date of whether the consent of the father of an illegitimate child, who later has married the mother [is required], is the date

the court assumes jurisdiction after all other jurisdictional requirements with respect to the consent of the mother have been met, . . ." *Adoption of Morrison, supra* (p. 65). The jurisdictional requirements referred to are those named in sec. 322.04 (4), as follows:

*"Execution of consent by parent.* The consent by a parent must be signed before a judge of any court of record, unless the court otherwise orders, and after the judge has explained to the parent the effect of the consent and has examined the parent and is satisfied that consent is voluntary and is freely given. The minority of a parent is not ground for revoking consent."

The mother's consent was signed August 22, 1947. George's parents married May 5, 1948. We consider it *res judicata* that Mary Ann gave consent and her husband did not by the marriage acquire the right to be consulted as to consent while the adoption proceedings were pending. We observe that the mandate concluding *Adoption of Morrison, supra,* reversed the judgment decreeing adoption but did not dismiss the adoption proceeding nor, upon remittitur, did the trial court do so. If, at any subsequent time during the mother's minority, a guardian *ad litem* had concurred in her consent or if Mary Ann upon coming of age had given consent, the original petition for adoption was still pending and effective to support further proceedings. We consider that the present proceeding carries forward the pending matter and is not an original action begun after the appellants had acquired new rights by their marriage. We conclude that ch. 170, Laws of 1953, did not deprive the natural parents of any rights guaranteed them by the state or federal constitutions.

The appellants submit that ch. 170, Laws of 1953, is unconstitutional for the further reason that it is an invasion of the judicial function by the legislative branch and is an attempt to change the rights of parties once judicially deter-

mined. We do not subscribe to those propositions. Adoption proceedings are purely statutory, as we have often said, *Lacher v. Venus* (1922), 177 Wis. 558, 188 N. W. 613; *Adoption of Tschudy* (1954); ante, pp. 272, 281, 65 N. W. (2d) 17. In Wisconsin they are judicial proceedings, *Adoption of Tschudy, supra* (p. 284), but that does not mean that it is the court which sets the standards to be met before it may or shall decree adoption. The adoption requirements are statutory, determined by the legislature. The judicial function is the determination of whether those requirements have been met. It is within the legislative power to give the courts discretionary powers, when certain conditions have been judicially determined to exist, or to direct the court's action in the premises without discretion. A familiar example is the latitude given the courts in sentencing a person judicially determined to have committed a murder in the second degree, sec. 340.08, Stats., contrasted with the statute's arbitrary direction that the court shall impose a life sentence if the verdict is for murder in the first degree. We conclude that the mandatory direction of a decree under certain conditions by ch. 170, Laws of 1953, was not an assumption of judicial powers by the legislature.

It is argued that the welfare of the child is the paramount consideration in adoption matters and is the sole justification of laws which permit a child to be declared the child of others than his natural parents; and it is then pointed out that ch. 170, Laws of 1953, provides for no inquiry or finding concerning the child's best interests as of the date of the order of adoption authorized by such chapter but that such order is mandatory, regardless of the child's interests, if the other facts are shown. The trial court, Judge DARLING, did conduct a searching inquiry into the question of which home presently best served George's interests. Not only the facts demanded by sec. 322.04 (9) (b), Stats., were made to appear but those required by sec. 322.05 were of record (except

for the concurrence by the guardian *ad litem* in the mother's consent) and on them and upon the current inquiry, in the words of sec. 322.05, the court was satisfied and expressly found that George's "best interests will be promoted by adoption."

There is a possible inconsistency between the omission in sec. 322.04 (9) (b), Stats., of a current finding concerning the child's best interests and the requirement in sec. 322.05 that the court which makes the order of adoption shall be satisfied that such best interests are being served. Obviously the conscientious and learned trial judge considered that *he* must be satisfied, under the provisions of sec. 322.05, whether or not sec. 322.04 (9) (b) required it. He conducted an investigation, he was satisfied, and he gave judgment accordingly. We regard it as unnecessary to determine now whether the county court could be compelled to order an adoption in strict conformity with the command of sec. 322.04 (9) (b), without being satisfied that it accorded with the best interests of the child.

We go no further now than to commend the reconciliation of the two statutory sections by the learned trial court and the procedure which that court followed. At least when sec. 322.04 (9) (b), Stats., is so interpreted and applied in conjunction with sec. 322.05, it does not offend the constitutional rule previously quoted from 1 Am. Jur., Adoption of Children, p. 623, sec. 4, via *Adoption of Morrison, supra* (pp. 59, 60).

Appellants submit that the legislature cannot change the rights of parties once judicially determined. The legislature has not done so. The rights of the parties were determined in *Adoption of Morrison, supra,* in accordance with the requirements of the statutes governing adoption as they then existed. The legislature is not bound to continue its statutes without change and if changes are duly enacted the present rights of citizens may differ from those they had in the past whether

or not the former rights had been declared by a court. For example, sec. 245.03 (1), Stats., prohibits marriage between first cousins. If first cousins should seek now by mandamus to compel the issuance of a marriage license to them their action would certainly fail, with a probable declaration by the court that the law gave them no right to marry. But we cannot conclude that the legislature is barred thereby from amending the statute so that first cousins may marry,—as they may in many jurisdictions,—nor can we conclude that if the statute was so modified the former adjudication would stand in the way of their marriage, nor that if the amendment was made while the application for a license was pending that the application ought not to be granted. In the instant case a reading of sec. 322.04 (9) (b) will show that the legislature has not tried to make valid an adoption order previously declared invalid nor has it retroactively changed established rights. It has declared that under certain conditions adoption shall henceforth be possible although it was not possible formerly under the same facts. We consider that the legislature had the constitutional right and power so to modify the pre-existing statute and that a judicial decision in 1951 that adoption failed by reason of noncompliance with the then statute does not affect the right of parties to proceed in compliance with the statute as it presently exists. See, too, note II, Anno. 25 A. L. R. 1136.

Appellants tell us that the existing facts do not bring this proceeding within the terms of sec. 322.04 (9) (b), Stats. Counsel suggest now that the first order of adoption was not invalid solely because of failure to secure concurrence in consent by the guardian *ad litem,* as the amendment requires. We have examined the briefs submitted by the appellant on the first appeal. They conclude:

"It is therefore respectfully submitted that the court find that the mother of the child should have the right to withdraw her consent, that the father, after legitimatizing the

child by the marriage to the mother, should also be required to give his consent, and that a nonconcurrence of a guardian *ad litem* should be vital to the adoption proceeding."

Our opinion held against her on the first two such propositions but with her on the third. We said (p. 69):

"Because of the jurisdictional defect in failing to obtain the concurrence of a guardian *ad litem* in the minor mother's consent to adoption, the judgment decreeing adoption is void and must be set aside."

There can be no speculation as to what might have been said if other points had been raised or determined. The sole ground on which the court declared the judgment of adoption void was that the concurrence of the guardian *ad litem* in consent was not obtained. The requirement of the amended statute is satisfied in this respect.

Appellants urge that the statute which, by its terms, refers to the order for the adoption of an illegitimate child, does not affect the case of George Morrison who had become legitimate by the marriage of his parents before the order was entered. Consistent with our construction in the previous appeal that the date when the status of the father was settled, for the purpose of the adoption proceedings, was the date when the court assumed jurisdiction after the jurisdictional requirements with respect to the consent of the mother had been met, we now hold that the status of the child for such purposes is determined as of the same date and the proceeding then begun to adopt an illegitimate child of a minor mother remains a proceeding to adopt an illegitimate child of a minor mother regardless of legitimacy conferred by a subsequent marriage of the parents or by the mother ceasing, by the passage of time, to remain a minor.

The appellants urge that George was not placed for adoption, as the amended statute requires. The mother gave him or directed her attorney to give him in her presence to respondents to be adopted by them. Five days later she signed

a written consent to his adoption before a circuit judge (see 260 Wis. 58) which, as a confirmation and ratification of her action and purpose, puts it beyond all controversy that the delivery of the child to the Manesewitzes was a placing by the mother of the child for adoption. The trial court held that he was so placed and the evidence sustains the finding.

Finally, appellants submit that they instituted *habeas corpus* proceedings which were never concluded and that because of them George must be considered to have been in the custody of the court since November 23, 1951, wherefore, although he has lived in the Manesewitz home during all that time, he has not been in the custody of the Manesewitzes for the five years demanded by sec. 322.04 (9) (b), Stats. The argument is thin but, treating it seriously, when the court sent the Manesewitzes home with the child after they had produced him in court in response to the writ of *habeas corpus* they did not cease to be his custodians, though possibly because the *habeas corpus* proceeding was not dismissed they then were responsible to the court for him as they were not before. They remained his custodians and he remained in their custody for more than five years named in the statute. The first definitions of "custody" in Webster's New International dictionary are, "a keeping or guarding; care." It is apparent that in this adoption measure the legislature had in mind *custody* in the sense of the child being in the care of the persons with whom he might be placed for adoption and that such intent is satisfied if he remains in their home under their care, direction, and control for the prescribed period. Perhaps the court had power to interfere with such residence and care because of the *habeas corpus* proceeding. It did not do so and we consider that the child remained for more than five years in the Manesewitzes' custody, as meant by the statute.

We consider that sec. 322.04 (9) (b), Stats., is not unconstitutional for any of the reasons which appellants have

presented for our consideration. We consider, also, that the evidence sustains the trial court's findings that the statutory requirements have been met. We note particularly that the two trial judges who have passed upon the question of the best interests of the child have determined that these are best served by his adoption by respondents. We conclude that the judgment (or order) of adoption must be affirmed.

Respondents moved to review that part of the trial court's findings that the natural parents have a home which would be suitable for George if his best interests did not demand that he remain with the respondents. There was conflicting evidence which the trial court was in a far better position to appraise than we. We do not consider its findings in this respect to be contrary to the great weight and clear preponderance of the evidence and consequently we deny the motion to review.

Respondents' brief exceeds 50 pages and pursuant to Supreme Court Rule 10, sec. 251.264, Stats., they request permission to tax costs on the whole. The last 10 pages of the brief are devoted to their motion to review, on which they did not succeed. Permission to tax printing costs for that portion is denied. It is granted for the preceding portion of the brief.

*By the Court.*—Order decreeing adoption affirmed. Respondents' motion to review denied. Respondents may tax costs for printing their brief except for its last 10 pages.

FAIRCHILD, C. J., took no part.