ESTATE OF CHRISTL: WALTER and another, Appellants, v. CHRISTL and another, Respondents.

*February 4—March 3, 1959.*

For the appellants there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton*.

For the respondents there was a brief by *Wilmer & Surplice* of Green Bay, and *Thomas B. McKenzie* of Appleton, guardian *ad litem,* and oral argument by *Mr. Richard C. Surplice* and *Mr. McKenzie*.

FAIRCHILD, J.   Appellants assert that the order of adoption is void because there was no consent by or notice to the natural parents. The sufficiency of the petition for adoption is not challenged.

The applicable statute was sec. 4022, Stats. 1919, entitled, "Adoption of child; consent, who to give; notice of hearing." Appellants suggest that since there was no express finding in the order of adoption that the child was not born in lawful wedlock, we must test the proceeding by the portion of the statute which would apply in the case of a child of married parents. Obviously, there is nothing which would qualify as a consent on the part of the father; there is no finding

that the father abandoned the child or was dead; there was no notice given to the father.

.We deem it clear, however, that we need not assume that the child was legitimate. The court had before it a printed form of order for adoption which would be appropriate in the case of a legitimate child. Spaces were provided for inserting the names of the father and the mother, "his wife." These portions were struck out and the material inserted showed that the child was "a child of M———— P———— [a woman's name] . . . father unknown." The statute does not provide that the order of adoption must recite a finding of illegitimacy in any particular language. If it were not clear enough from the papers that the county court, upon sufficient evidence, considered the child illegitimate, resort could be had to sec. 253.21, Stats. 1957, providing as follows:

"When the validity of any order or judgment of a county court shall be drawn in question in any other action or proceeding everything necessary to have been done or proved to render the order or judgment valid, and which might have been proved by parol at the time of making the order or judgment and was not required to be recorded, shall, after twenty years from such time, be presumed to have been done or proved unless the contrary appears on the same record."

The applicable portion of sec. 4022, Stats. 1919, was, "In case of a child not born in lawful wedlock such consent may be given by the mother, if she is living and has not abandoned such child; . . ." The consent of the father was not required. "The 'consent of the parents' so referred to is the consent of the mother, alone, when the child is illegitimate, for at common law such a child had no father known to the law, . . ." *Adoption of Morrison* (1954), 267 Wis. 625, 631, 66 N. W. (2d) 732.

The attorneys for petitioners in 1920 evidently proceeded at first upon the theory that the document signed by the mother was an "assignment" of the child to the care and custody of a "home-finding corporation" and that the consent which was indorsed upon the petition by the corporation was sufficient. They doubtless had in mind sec. 58.02, Stats. 1919, entitled "Home-finding corporations" and providing in part as follows:

"(1) Any corporation organized for the purpose of seeking out and receiving orphans or homeless, abandoned, neglected, or grossly ill-treated children and of procuring homes in families for them may receive into its charge and under its control any neglected or dependent child, as defined in sec. 48.01 or any child assigned to its care and custody by an instrument in writing, executed by its parent or some person standing in place of such parent.

"(2) Every such corporation is hereby constituted the legal guardian of all children committed to or received by it; may consent to the adoption of any such child by any person in the same manner and with the same force and effect as such consent could be given by its parent; . . ."

The order of adoption, however, was drawn upon the theory that written consent by the mother was before the court. The document signed by the mother was dated some eight months before the petition and made no specific reference to adoption by the Christls. Appellants cite authority to the effect that a "blanket" consent is insufficient to confer jurisdiction. Anno. 24 A. L. R. (2d) 1138. In this case, however, the court had before it, in addition to the document signed by the mother, a specific consent by a corporation authorized by law to consent to adoptions. We can assume that the county court was satisfied that the relationship between the religious order and the corporation was such that an assignment of the child to the order was in fact an assignment to the corporation. Even if it were

error for the county court to consider the documents before it as constituting a valid consent by the mother, we conclude that it would be error within jurisdiction and would not open the order of adoption based upon these documents to collateral attack. The petition for adoption being sufficient, the proceeding was not totally void as in *Will of Bresnehan* (1936), 221 Wis. 51, 265 N. W. 93.

Appellants point out that consent by the mother is sufficient if the mother "is living and has not abandoned such child." An alternative theory of the events as disclosed by the record may be suggested as follows: The mother abandoned the child when she executed the written instrument in October, 1919. The same written instrument waived notice of any adoption proceedings to which the religious order might consent. The relationship of the unincorporated religious order and the corporate St. Mary's Mothers and Infants Home may be presumed to have been established. The consent of the latter corporation was sufficient under sec. 58.02, Stats. 1919. While notice to a mother or to parents of a legitimate child would presumably be necessary if the child had been committed to the care of a home-finding corporation as a neglected or dependent child (*Lacher v. Venus* (1922), 177 Wis. 558, 568, 188 N. W. 613), there would be no occasion for such notice where an instrument such as the one before us executed by the mother has been made a part of the record.

We deem it unnecessary in this case to determine which of the theories is legally the more accurate. Under one of them at least, the record shows that the jurisdictional requirements of the statute in force in 1920 were met.

Under the circumstances it is not necessary to consider whether sec. 322.09, Stats. 1939, formerly in force, has any bearing upon this order of adoption. The point has not been raised by counsel. In *Will of Bresnehan, supra,* page

66, it was held that sec. 322.09, as it then read, could not be applicable as a statute of limitations to attacks upon adoptions prior to July 1, 1927. By ch. 524, Laws of 1939, this section was amended and sub. (1) then read:

"(1) Failure to comply in adoption proceedings with the essential requirements of this chapter shall be ground for annulment of the order of adoption within two years after date of entry thereof. Except as provided in subsection (2), any order for adoption heretofore or hereafter made by a court of record of this state shall be valid and conclusive and binding on all persons whomsoever and in all proceedings whatsoever after two years from the date of entry thereof, and any person who participated in the proceedings or who makes claim to property rights by, through, or under any person who so participated, shall be estopped from attacking the validity of such adoption proceedings after said two years; provided, however, that where the adoption proceedings were had within two years prior to July 1, 1929, the two-year limitation period above set forth shall be construed to mean within two years from July 1, 1929, and where the adoption proceedings were had more than two years prior to July 1, 1929, the two-year limitation period above set forth shall be construed to mean within two years from and after July 1, 1940."

The section was again changed by ch. 218, Laws of 1947, and thereafter sub. (1) read:

"(1) In adoption proceedings failure to comply with the essential requirements of this chapter shall be ground for annulment of the order of adoption within two years after date of entry thereof. Except as provided in subsection (2), an order for adoption made by a court of this state which had jurisdiction of the parties and of the subject matter shall be conclusive and binding on all persons and in all proceedings after two years from the date of entry thereof."

The section was repealed by ch. 575, Laws of 1955.

If it be assumed that sec. 322.09 (1), Stats., in the form it had from 1939 to 1947 would have barred any attack

after July 1, 1942, upon the order of adoption now before us, the question would then arise whether the change made in 1947 or the repeal in 1955 removed the bar.

*By the Court.*—Judgment affirmed.