GREEN BAY METROPOLITAN SEWERAGE DISTRICT, Plaintiff and Respondent, v. VOCATIONAL, TECHNICAL & ADULT EDUCATION, DISTRICT 13, Defendant and Appellant: CITY OF GREEN BAY, Impleaded Defendant and Respondent.

*No. 69. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 623.)

---

[49] (1970), 48 Wis. 2d 321, 326, 327, 179 N. W. 2d 885.
[50] *Padilla v. Bydalek, supra,* footnote 44, at page 779.

630

632

634

For the appellant there was a brief by *Bittner, Petit-jean & Hinkfuss* of Green Bay, and oral argument by *Robert L. Bittner.*

For the respondent there was a brief by *Cohen, Grant, Liebmann & Conway* and *Meyer M. Cohen,* all of Green Bay, and oral argument by *Meyer M. Cohen.*

BEILFUSS, J. The basic issue is whether MET has the statutory power and authority to directly impose and collect a service charge against VOC.

VOC contends that it is not a municipality [3] or state institution within the meaning of sec. 66.208 (2), Stats. 1969, and the MET has no authority to impose or collect a sewerage service charge. VOC also argues that MET can only charge the city and then the city, pursuant to sec. 66.208 (2) (d), as a municipality can, if it so desires, impose an assessment charge against VOC.[4]

Metropolitan sewerage districts are created, governed and derive their powers and duties as provided in secs. 66.20 to 66.209, Stats.[5] Sec. 66.20 (2) sets forth several specific definitions of words for use in these sections, but fails to provide a definition for the words "municipality" and "institution." Therefore a question of statutory construction becomes decisive of the issue. In cases such as this, where the parties cannot agree on the proper interpretation of a particular tax section, there are several fundamental rules of construction which the court applies, to wit:

---

[3] In both the answer and amended answer, VOC admits MET's allegation that VOC is a municipal corporation. We find no motion by VOC to amend its pleadings to conform to the proof. MET argues a municipality and a municipal corporation are synonymous. We do not regard the failure to amend the pleadings as fatal because whether VOC is a municipality is a question of law.

[4] The city was interpleaded as a defendant. It answered and appeared in the trial court but has not appeared in this appeal.

[5] Sec. 66.20, Stats. 1969 proviso.

"First, unless a statute is unclear or ambiguous, legislative intent must be found ' "by giving the language its ordinary and accepted meaning." ' Similarly, when the legislature does impose a tax, it must do so in clear and express language, with all ambiguity and doubt in the particular legislation being resolved against the one who seeks to impose the tax.

"Although the benefit of the doubt shall be given to the taxpayer in cases where the language imposing the tax is ambiguous, there is no duty upon the court ' ". . . to search for doubt in an endeavor to defeat an obvious legislative intention." ' " *Transamerica Financial Corp. v. Department of Revenue* (1972), 56 Wis. 2d 57, 64, 65, 201 N. W. 2d 552.

Sec. 990.01, Stats., states that in the construction of Wisconsin laws ". . . the words . . . which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature;" to wit:

"(1) GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.

" . . .

"(22) MUNICIPALITY. 'Municipality' includes cities and villages; it may be construed to include towns.

" . . .

"(42) TOWN. 'Town' may be construed to include cities, villages, wards or districts."

From these subs. it is quite evident that a "school district," including a vocational, technical and adult education district, does not fall within the meaning of a "municipality" as used in sec. 66.208 (2) (a), Stats. This is further evidenced by the Laws of 1971 which have repealed secs. 66.20 to 66.209 and have replaced them with secs. 66.22 to 66.26.[6] Under these new enactments

---

[6] April 30, 1972, is the effective date for these new laws.

sec. 66.20 now provides a definition for the word "municipality." There the word means a town, village, city or county. School districts are not included within this definition.

MET argues that because VOC is a school district and thereby a municipal corporation, to say it is not a "municipality" defies all reason and logic. There are numerous sections within ch. 66, Stats., that give various definitions of the word "municipality." For example, secs. 66.29 (1) (b) and 66.027 define it differently than sec. 66.03 (1), and both define the word differently than sec. 990.01 (22).[7] This court has also given the words "school district" various meanings depending upon the context in which it is used. In *District No. 3 v. Macloon* (1855), 4 Wis. 98 (*79), the court defined "school district" as a quasi-corporation. In *Greenfield v. West Milwaukee* (1956), 272 Wis. 215, 226, 75 N. W. 2d 424, we held that, ". . . A school district is a distinct and separate municipal entity. . . ." On the other hand, in *State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553, this court stated a school district as used in sec. 40.51, Stats. 1929, implies a school system rather than a municipal entity. The word "municipality" as defined in Black's *Law Dictionary* (4th ed.), is also accorded several different meanings, to wit: "A legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes. . . ." The notes in Black point out that though the word is sometimes limited in its application to cities, it ordinarily includes towns as well, and on occasion it

---

[7] Sec. 66.03 (1) defines "municipality" as: "DEFINITION. In this section 'municipality' includes school district, town, village and city." Sec. 66.29 (1) (b) defines "municipality" as: "The term 'municipality' shall mean and include the state and any town, city, village, school district, board of school directors, sewer district, drainage district, or any other public or quasi public corporation, officer, board or other public body charged with the duty of receiving bids for and awarding any public contracts."

includes townships, counties, school districts "and every kind and character of public corporations which are created by statute or the Constitution of the state, . . ." But the notes in Black add that neither townships nor school districts nor the like are necessarily included. Therefore, the fact that VOC is a school district created under the laws of this state does not per se mean it is a "municipality" under sec. 66.208 (2) (a). A careful reading of secs. 66.20 through 66.209 also supports this conclusion. Those sections do not even mention school districts, while cities, villages and townships are discussed throughout with respect to their relation to MET.[8]

No authority is cited to support MET's position that VOC is an "institution" any more than it is a "municipality" under sec. 66.208 (2) (a), Stats. Secs. 66.20 through 66.209, and ch. 38 on the creation of VOC, are silent on the matter. Further, ch. 990, on the construction of statutes, offers no definition. In *School Board v. State Superintendent* (1963), 20 Wis. 2d 160, 171, 121 N. W. 2d 900, this court stated, ". . . school districts are governmental agencies created by legislative authority to perform the public duty of educating children of the state. . . ." In *Zawerschnik v. Joint County School Comm.* (1955), 271 Wis. 416, 429, 73 N. W. 2d 566, the court stated, "A school district is a quasi-municipal corporation. It is an agent of the state for the purpose of administering the state's system of public education. . . ." Neither of these definitions support the contention that VOC is an "institution."[9] These authorities support VOC's interpretation, especially in light of the rules of statutory construction.

Notwithstanding, MET argues that it then has such authority under sec. 66.076 (1) and (4), Stats., to di-

---

[8] Secs. 66.20 (1); 66.202 (9) (b) and (12); 66.203 (11); 66.205 (3) and (4); 66.206 (2) and (12); and 66.207 (1) and (2), Stats.

[9] *See also West Milwaukee v. Area Bd. Vocational, Technical & Adult Education, supra,* pp. 376, 377.

rectly impose the service charge. Sec. 66.209 states that sec. 66.076 (1) and (4) applies to districts organized and existing under secs. 66.20 to 66.209. Because MET is such a district, these provisions give MET the status of a "municipality" as used therein. This is further evidenced by sec. 66.076 (1m) of the 1971 statutes which defines "municipality" in that section as including a "metropolitan sewerage district." But still neither sub. (1) nor (4) under the 1969 statutes gives MET the power to levy a direct charge against VOC. Sub. (1) merely empowers any town, village or city to construct, acquire, lease, extend or improve any plant. Payment for this may be provided from a general fund, taxation, special assessment, bonds or sewerage service charges, etc. Sub. (1) does not mention or indicate who is to be so taxed or charged. Sub. (4) empowers the governing body of the municipality to establish sewerage service charges in such amounts as to meet all or part of the requirements for construction, improvements and maintenance of the sewerage system ". . . and for the payment of all or part of the principal and interest of any indebtedness incurred . . . ." This subsection in no way empowers MET to make a "direct sewerage service charge" against VOC. Sec. 66.076 (4), Stats. 1971, supports this interpretation, stating:

". . . Service charges made by a metropolitan sewerage district to any town, village or city shall in turn be levied by such town, village or city against the individual sewer system users within the corporate limits of such municipality, and the responsibility for collecting such charges and promptly remitting same to the metropolitan sewerage district shall lie with such municipality. Delinquent charges shall be collected in accordance with sub. (7)."

It thus appears under the 1971 statutes, and by analogy to the 1969 statutes, that the city can levy the sewerage service charge against the user but MET cannot.

VOC contends the lack of a sewerage service charge provision in the lease agreement between the city and VOC exonerates VOC from paying such service charges to MET. We agree.

Sec. 38.155 (4m) (a), Stats. 1969, states:

"Upon the creation of a vocational, technical and adult education district under this section, all property, assets, claims, contracts, obligations, rights, duties and liabilities of any nature and kind relating and pertaining to any vocational and adult education school operated in any city or village located in the area included in such district shall remain the property, assets, claims, contracts, obligations, rights, duties and liabilities of such city or village, unless at the option of the governing body of such city or village, the whole or any portion thereof, is transferred to the district under an agreement between such city or village and the district as to the use, obligation and ownership thereof."

Under this section the claims, obligations, rights, duties and liabilities of the city remain the city's unless by agreement they are transferred to VOC. The executed lease agreement does not provide for any transfer of the city's obligation and its liability for sewerage services rendered at the building located at 200 South Broadway. Though sewerage services were included in the first draft, such provision was deleted from the executed agreement. Accordingly, there has been no transfer to VOC for the cost of such services by the city which it had the right to in the lease agreement. As a result, the charges remain the liability of the city. MET therefore can collect such charges from the city and not from VOC.

MET argues it is inequitable for the taxpayers of MET to assume the entire cost of the sewerage service to VOC because the entire nine-county area of VOC utilizes its services. Although the service charge as it appears from the evidence is almost nominal, the equitable argument does have some appeal. The fact remains, however, that MET owes its creation to legislative authorization and

its power or right to impose a service charge must be found in that legislation. From our examination and construction of the statutes we find no such authority. We hold, therefore, that under the statutes as they now exist, MET cannot impose and collect a sewerage service charge directly from VOC.

Because we have decided VOC has no direct liability to MET, we do not reach VOC's claim of unconstitutional discrimination.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.