IN RE PETITION OF MADISON METROPOLITAN SEWERAGE DISTRICT and others for attachment: MADISON METROPOLITAN SEWERAGE DISTRICT and others, Appellants, V. DEPARTMENT OF NATURAL RESOURCES and others, Respondents.*

*No. 158. Argued January 2, 1974.—Decided April 12, 1974.* (Also reported in 216 N. W. 2d 533.)

---

\* The motion for rehearing was granted with costs to the appellants on June 4, 1974, with direction for filing briefs and oral arguments, if any, to await further order of the court. The motion was not decided at the time this volume went to press. Its disposition will be reported in a later volume.

176

For appellant Madison Metropolitan Sewerage District there was a brief by *Axley, Brynelson, Herrick & Gehl* of Madison, and oral argument by *Eugene O. Gehl;* for appellant city of Sun Prairie there was a brief by *Boardman, Suhr, Curry & Field* of Madison, and *Wilmer E. Trodahl,* city attorney, and oral argument by *Richard L. Olson* of Madison; and for appellant Token Creek Sanitary and Water District there were briefs by *Robert D. Sundby* and *Herro, McAndrews & Porter, S. C.,* all of Madison, and oral argument by *Mr. Sundby.*

For respondent city of Madison there was a brief by *Edwin Conrad,* city attorney, and *Henry A. Gempeler,* assistant city attorney, and oral argument by *Mr. Gempeler;* for respondents Richard A. Lehmann and Capital Community Citizens Organization there was a brief and oral argument by *Richard A. Lehmann* of Madison.

WILKIE, J. On May 14, 1973, this court denied the motion of respondents Richard Lehmann, Capital Community Citizens, and the city of Madison, to dismiss the appeal on the grounds that the right to appeal had been legislatively denied and that the appeal had been rendered moot by legislative action. This motion was renewed in

the briefs on this appeal. We have nothing to add to our previous action denying the motion and that motion is denied. We reach the merits.

The lone issue on appeal is: Did the trial court err in construing sec. 144.05 (1), Stats. 1969, to include those parts of secs. 66.20 to 66.209 which had been declared unconstitutional by this court as an improper delegation of legislative power to the judiciary?

The general rule is clear that this court will not consider the legislative history of a statute unless the statute is ambiguous.[2] The test of ambiguity has been consistently stated: " ' "A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." ' "[3] Sec. 144.05 (1), Stats. 1969, provided that municipalities meeting certain specified geographical requirements "shall be added to such metropolitan sewerage district upon application of the governing body of such municipality as provided in s. 66.205 (1)." Sec. 66.205 (1), Stats. 1969,[4] was a general annexation statute providing that when it was desired to add territory to existing sewerage districts "a court proceeding similar to that for the creation of the original district shall be followed." The creation of sewerage districts was governed by two statutes: secs. 66.201 and 66.202. The provisions of sec.

[2] *Evangelical Alliance Mission v. Williams Bay* (1972), 54 Wis. 2d 187, 194 N. W. 2d 646.

[3] *Milwaukee Fire Fighters Asso. v. Milwaukee* (1971), 50 Wis. 2d 9, 13, 183 N. W. 2d 18; *Kindy v. Hayes* (1969), 44 Wis. 2d 301, 171 N. W. 2d 324.

[4] Sec. 66.205 (1), Stats. 1969: "If any time the commissioners think it desirable to or are petitioned to include other territory in the district, a court proceeding similar to that for the creation of the original district shall be followed, such court proceeding, however, to be only upon the territory to be added and shall in no way affect the original district. A petition signed by the commissioners shall be deemed sufficient to start proceedings for the annexation of territory to the district."

66.202 were found by this court to be unconstitutional in *In re City of Fond du Lac*.[5]

If the reference to sec. 66.205 (1), Stats. 1969, contained in sec. 144.05 (1) meant to incorporate the provisions of both secs. 66.201 and 66.202, the provision would be unconstitutional under the holding in the above case. The appellants contend that the reference in sec. 144.05 (1) only incorporates the provisions of sec. 66.201. We feel that the reference in sec. 144.05 (1) to sec. 66.205 (1) creates an ambiguity as to whether it was intended that the annexation proceeding contemplated by sec. 144.05 (1) would be governed by both secs. 66.201 and 66.202, or just by sec. 66.201. Therefore, we conclude that it is permissible to refer to the legislative history of sec. 144.05 (1), Stats. 1969, to aid in the construction of the statute.

In early 1963, Dane county court denied the petition of the city of Sun Prairie to be attached to the Madison Metropolitan Sewerage District. The trial court denied the petition because it concluded that the Madison district had for its purpose the protection of the lakes within the drainage area in which the district was located and that it would be inequitable to add to the expense of the district by bringing in sewage from a community in a different drainage basin. The court had found that only a small corner of the city of Sun Prairie was located in the drainage area served by the Madison Metropolitan Sewerage District. This decision was not appealed.

The appellants in this case contend that sec. 144.05 (1), Stats. 1969, mandates attachment of qualifying municipalities as a matter of law and that the reference to sec. 66.205 (1) is only to the procedure to be followed in ordering such attachments. The respondents contend that the reference to sec. 66.205 (1) incorporates all relevant portions of secs. 66.20–66.209, including the unconstitu-

---

[5] *Supra*, footnote 1.

tional requirement of judicial determination that the purposes of secs. 66.20–66.209 will be best served by the attachment. They contend that the sentence is only meant to remove the impediment to attachment created by the trial court's decision that the purpose of a metropolitan sewerage district would not be served by the addition of territory only partially within the watershed it served.

In its memorandum decision the trial court concluded that the respondents' position was the only reasonable interpretation.

"Notwithstanding the fact that the second interpretation prevents this Court from acting on the petition, the Court is convinced that it is the only reasonable interpretation of the statute. This conclusion is based upon the statute's legislative history, rules of statutory construction and relevant case authority."

From our review here of the trial court's determination we conclude that the trial court was in error in concluding that the interpretation contended for by the appellants would result in an unconstitutional procedure.

An analysis of *Milwaukee v. Sewerage Comm.*[6] is required at this point. In the *Milwaukee Case,* a statute allowing consolidation of villages, towns and cities upon the passage of ordinances by the boards or councils of those municipalities involved in the consolidation and ratification by the electors of the areas at a referendum, was assailed on the ground that it was an unconstitutional delegation of legislative power to municipalities. The sewerage commission in that case argued that while the statute was not an option law, there was an authorization of ordinances which have the characteristics of an option law. This court said that while the legislature cannot delegate power to make a law or to declare whether there shall be a law, nevertheless the legislature can make a

---

[6] (1954), 268 Wis. 342, 67 N. W. 2d 624.

law to become operative on the happening of a certain contingency or on the ascertainment of a fact upon which the law makes or intends to make its own action depend. This court said:

".  .  . The action of local units in doing what is required by the general law is not an arrogation of power reserved to the legislature. The true test and distinction whether a power is strictly legislative, or whether it is administrative and merely relates to the execution of the statutory law, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter, no valid objection can be made.  .  .  ." [7]

The court in response to the argument that the statute created an option law agreed that it afforded to the local authorities and electors the choice of determining whether the territory and government of the local political body should remain in status quo or be merged with another. This court agreed with the respondent in that case who said that, " 'Whether or not a particular consolidation occurs is not a problem for the legislature once it has determined that a consolidation may take place as prescribed.' " [8]

It is clear from the *Milwaukee Case* that the "choice" of the governmental bodies is not controlled. The statute merely describes how the choice is to be made effective. In that case both municipalities had to agree to consolidation by passing appropriate ordinances and then the consolidation had to be approved by the electors of each municipality. In the present case if the statute is mandatory, the qualifying municipalities can in effect force themselves on the metropolitan sewerage districts in-

[7] *Id.* at page 351.

[8] *Id.* at page 356.

volved. However, this does not make the statute unconstitutional. Whether the boundaries of a governmental unit should be changed is purely a question of policy to be determined by the legislature. If the methods chosen work an injustice to any of the citizens of the state, their forum for relief is the legislature and not the courts.

" '. . . The state, therefore, at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest.' " [9]

Nor would this statute be a violation of the state's duty as trustee of water resources of this state as contended by the respondents. The state would have made a complete enactment and as explained above no legislative power would have been delegated to the municipalities involved.

The trial court also was in error in concluding that a mandatory construction of the second sentence of sec. 144.05 (1), Stats. 1969, would be an unconstitutional interference with the discretion of the court. The jurisdiction over the creation and enlargement of metropolitan sewerage districts is not found in the Wisconsin state constitution. It was given to the county courts by the legislature and can be altered or abolished by the legislature.

The real issue here is whether it is proper for the legislature to impose a duty on the courts which would appear to be administrative in character. In Corpus Juris Secundum [10] it is stated that "the provision in a state constitution dividing the government into three great departments does not prohibit one department from exercising powers of the nature of those belonging to another

[9] *State ex rel. Zilisch v. Auer* (1928), 197 Wis. 284, 293, 294, 221 N. W. 860, 223 N. W. 123.

[10] 16 C. J. S., *Constitutional Law*, pp. 488, 489, sec. 105.

department unless that power is expressly or impliedly conferred on the other department by the constitution." And in *Adoption of Morrison*,[11] this court indicated that it is permissible to direct the court to enter a specific order after determining that certain conditions are met. In that case there was a challenge to a portion of the adoption statutes which ordered that a decree of adoption should be finalized under certain circumstances despite technical irregularities in earlier proceedings. This court said:

". . . It is within the legislative power to give the courts discretionary powers, when certain conditions have been judicially determined to exist, or to direct the court's action in the premises without discretion. A familiar example is the latitude given the courts in sentencing a person judicially determined to have committed a murder in the second degree, sec. 340.08, Stats., contrasted with the statute's arbitrary direction that the court shall impose a life sentence if the verdict is for murder in the first degree. We conclude that the mandatory direction of a decree under certain conditions by ch. 170, Laws of 1953, was not an assumption of judicial powers by the legislature."

Thus, we think it clear that the legislature could constitutionally assign to the courts the statutory duty to enter an order attaching municipalities to metropolitan sewerage districts if certain conditions were judicially found to exist.

If the construction contended for by the appellants is constitutional, then the issue becomes whether it is a reasonable and permissible construction. As this court stated recently in *In re City of Beloit:* [12]

". . . We start with the basic principles of constitutional law and statutory construction: (1) That the

[11] (1954), 267 Wis. 625, 633, 66 N. W. 2d 732.
[12] (1968), 37 Wis. 2d 637, 643, 155 N. W. 2d 633.

statute must be presumed to be valid and constitutional, 2 Sutherland, *Statutory Construction* (3d ed.), pp. 326, 327, sec. 4509; *A B C Auto Sales, Inc. v. Marcus* (1949), 255 Wis. 325, 38 N. W. 2d 708; *White House Milk Co. v. Reynolds* (1960), 12 Wis. 2d 143, 106 N. W. 2d 441; and (2) if a statute is open to more than one reasonable construction, the construction which will accomplish the legislative purpose and avoid unconstitutionality must be adopted. *Attorney General v. Eau Claire* (1875), 37 Wis. 400; *State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 139 N. W. 2d 585; *Gelencser v. Industrial Comm.* (1966), 31 Wis. 2d 62, 141 N. W. 2d 898. Of course, the court cannot give a construction which is unreasonable or overlook language in order to sustain legislation, but likewise the construction need not be the most natural or obvious. *See State ex rel. Reynolds v. Sande* (1931), 205 Wis. 495, 238 N. W. 504."

The trial court concluded that the only reasonable construction of this statute was that the second sentence was designed to remove the impediments to attachment created by the 1963 decision of the Dane county court. In other words, the second sentence of sec. 144.05 (1), Stats. 1969, made it clear that municipalities were eligible for attachment under sec. 66.205 (1) even if they were only partially within the drainage basin served by the metropolitan sewerage districts involved. With this construction of the statute we agree.

The two constructions which the appellants argue are equally reasonable are diametrically opposed to each other. The legislature must have intended one or the other. The legislative purpose will not be served by choosing either one construction or the other. One cannot choose a construction which will save the constitutionality of a statute if it is apparently contrary to the legislative intent. As the quotation from *In re City of Beloit, supra,* indicates, it is only when two equally reasonable constructions both accomplish the legislative intent that one clearly chooses the construction which will save the constitutionality of the statute.

The first legislative proposal in response to the circuit court's 1963 decision was the proposed addition of a subsection (12) to sec. 66.205, Stats. The proposed amendment was to read as follows:

"Any municipality in such a county, any part of which is located within such a drainage basin and which is located within 10 miles of a metropolitan sewerage district on the effective date of this amendment (1965), *shall* be added to such metropolitan sewerage district upon application of the governing body of such municipality as provided in s. 66.205 (1)." (Emphasis added.)

The original request to the legislative reference bureau used the phrase "may be added." The final draft changed the word "may" to "shall." This indicates that "shall" should be construed to mean "may" under the circumstances.[13] The use of the word "shall" only indicated that the municipalities which met the geographic requirements were to be considered for attachment under the regular attachment procedure and were not to be precluded from attachment because of their geographical situation. The use of the word "shall" indicated that it was mandatory for the county court to consider their petitions but not that it was mandatory that the petitions be granted without any other policy considerations. At the time of this amendment the procedure by which the county courts were to decide that attachments to metropolitan sewerage districts "best served" the purposes of secs. 66.20–66.209 had not been declared unconstitutional. The proposed amendment never became law.

In 1965 an amendment was proposed to sec. 144.05 (1) of the statutes, which was essentially the same as the earlier proposal but which was worded to conform to the

[13] *State ex rel. Werlein v. Elamore* (1967), 33 Wis. 2d 288, 293, 294, 147 N. W. 2d 252: "We have frequently stated that the word 'shall' is to be construed to mean 'may' where such construction is warranted by other circumstances."

other language of sec. 144.05 (1). We cannot conclude that the language finally adopted by the State Senate and concurred in by the Assembly was intended to accomplish more than the first proposed amendment to sec. 66.205 in 1963.

It seems inconceivable that at a time when the county courts were to determine the necessity of attachments the legislature would mandate the inclusion of certain territory in sewerage districts without such a determination. In response to this court's determination that the statutory procedure for creation and addition to metropolitan sewerage districts was an unconstitutional delegation of legislative power to the county courts, the legislature transferred the policy determining function to the Department of Resources and to the Metropolitan Sewerage District Commissions.[14]

The legislative history here indicates that the legislature did not intend to mandate the addition of all municipalities meeting the geographic description in sec. 144.05 (1), Stats., to the appropriate metropolitan sewerage district, but that the intent was that these municipalities were to be considered for attachment "as provided in s. 66.205" despite the fact that they were not wholly within the drainage basin of the metropolitan sewerage district. This would remedy the reasons given for the exclusion of Sun Prairie by the county court of Dane county in its 1963 decision. To accept the appellants' proposed construction would not merely be to choose a construction which would save the constitutionality of the statute, it would be to choose an interpretation of legislative intent which is diametrically opposed to another interpretation which finds greater support in the legislative history.

[14] *See* sec. 66.22, Stats., Creation; and sec. 66.26, Stats., Addition of territory.

In addition, the reference in sec. 66.205 (1), Stats. 1969, to a "court proceeding" similar to that for the creation of a district must incorporate the provisions of both secs. 66.201 and 66.202, Stats. 1969. Sec. 66.205 (1) was a general annexation statute and if it incorporated only the provisions of sec. 66.201, it would itself have been, in effect, a "mandatory" annexation statute. Without incorporation of sec. 66.202 there would have been no criteria enumerated to govern the decision of whether an annexation petition should be granted or denied. If the legislature had intended, in sec. 144.05 (1), Stats. 1969, to incorporate only the procedural provisions of sec. 66.201, it would have referred directly to that statute rather than to sec. 66.205 (1).

The appellants also point out that the legislature has adopted a saving clause that indicates that actions for attachment pending in the county courts are to be continued under the old procedure. The appellants argue that the legislature was aware that certain parts of this procedure were declared unconstitutional and that the saving clause must indicate that sec. 144.05 (1), Stats. 1969, did not intend to include those parts which were unconstitutional. But we cannot ignore the fact that when the 1965 amendment to sec. 144.05 (1) was adopted, the procedure referred to in sec. 66.205 (1) was considered by the legislature to be constitutional. The legislature may have included this saving clause to allow the completion of proceedings begun under sec. 144.05 (1) if this court should find the procedure constitutional. This noncontemporaneous statute cannot be used to indicate that in 1965 the legislature intended to make the addition of certain territory under sec. 144.05 (1) mandatory and to indicate that references to sec. 66.205 (1) were only to procedural aspects and not to any discretion of the trial court in ordering attachments.

*By the Court.*—Order affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. The clear words and plain language of the statute involved (sec. 144.05 (1)), mandate that the court order the attachment of a petitioning municipality to a metropolitan sewerage district where the qualifying requirements of the statute are judicially found to have been met. Such attachment to such district is mandatory if (1) prescribed procedures are followed, and (2) required qualifications are established.

As to the prescribed procedure to be followed, the statute provides that application for attachment is to be made as provided in sec. 66.205 (1), Stats. 1969. This statute requires that there be (1) an application by petition; (2) appropriate notice; and (3) a hearing. In the case before us, such procedural requirements were met by the petitioning municipalities.

As to the qualifying conditions for attachment to a sewerage district, the statute requires a petitioning municipality to establish that it is: (1) Located in a county with a population of 240,000 or more; (2) located within a drainage basin of a lake more than two and less than 16 square miles in area (and that such lake is within 18 miles of the sewage treatment plant of the municipality) ; (3) located within 10 miles of the sewerage district; and (4) has made application for attachment to the district. Upon establishing such qualifications, the petitioning municipality ". . . shall be added to the metropolitan sewerage district," provided that it pay ". . . its fair share of the cost of attachment as determined by mutual agreement or a court of competent jurisdiction." (Sec. 144.05 (1), Stats.) In the case before us, such qualifying conditions for mandatory attachment to the district were met by the petitioning municipalities.

The sole and single duty assigned to the courts by this statute is to enter an order attaching the petitioning municipality to the metropolitan sewerage district

(1) if the prescribed procedure has been followed; (2) if the required qualifying conditions are judicially found to have been met; and (3) with a provision that the petitioning municipality ". . . pays its fair share of the cost of attachment as determined by mutual agreement or a court of competent jurisdiction." (Sec. 144.05 (1), Stats.) The majority opinion agrees that it is constitutionally proper and permissible for a legislative body so to do. As earlier decided by this court, it is permissible to thus direct the court to enter a specific order after determining that certain conditions are met. (*Adoption of Morrison* (1954), 267 Wis. 625, 66 N. W. 2d 732.)

With the mandate of the statute clear and unequivocal, the writer sees no question of judicial construction presented. Judicial construction of a legislative enactment is invoked only when the law is ambiguous and its meaning subject to different interpretations. (*Milwaukee Fire Fighters Asso. v. Milwaukee* (1971), 50 Wis. 2d 9, 13, 183 N. W. 2d 18.) We are called upon to construe a statute only when it is capable of being understood by reasonably well-informed persons in either of two or more senses. (*National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 267, 163 N. W. 2d 625.) The majority does not find the "shall be added" provision of the statute ambiguous. The majority finds need and right to construe, not in the statute as enacted, but as to whether the legislature intended to enact what it did enact. When it provided that petitioning municipalities, meeting specified conditions, "shall be attached," the legislature, the majority holds, intended only to mean no more than that such qualifying municipalities are "eligible for attachment." Having changed the statute from a mandatory "shall" to a discretionary "may," the court majority strikes down the statute, as revised and altered, as an unconstitutional delegation to the courts of a duty legislative or administrative in character. (*In*

*re City of Fond du Lac* (1969), 42 Wis. 2d 323, 333, 166 N. W. 2d 225.)

How can the clear mandate that qualifying municipalities "shall be added" somehow become the nonmandatory directive that qualifying municipalities may, but need not be, attached to the sewerage district? The majority accomplishes the substitution of words and change in meaning by a resort to the legislative history of the statute involved. Legislative history can be used to establish legislative intent, but resort to either requires ambiguity in the statute. Legislative history and legislative intent may be determined to resolve ambiguity, but not to create it. Where there is no ambiguity on the face of the statute, there is neither right nor reason to inquire into legislative history and legislative intent. In determining ambiguity, as well as in determining legislative intent, the language of a statute is to be given its ordinary and accepted meaning. (*Green Bay Metropolitan Sewerage Dist. v. Vocational, Technical & Adult Education* (1973), 58 Wis. 2d 628, 207 N. W. 2d 623.) Giving plain and ordinary words their accepted and only meaning, there is nothing ambiguous in the mandate, "shall be added."

Even if the legislative history of this statute created an alternative construction to what the statute on its face provides, the writer would accept the construction deriving from the language of the statute and reject the construction deriving from the legislative history. Given two possible interpretations of a statute, by one of which it would become unconstitutional and by the other remain valid, the highest court in this land has said that ". . . our plain duty is to adopt that which will save the act. . . ." (*Labor Board v. Jones & Laughlin* (1937), 301 U. S. 1, 30, 57 Sup. Ct. 615, 81 L. Ed. 893.) Or, as this court has said, "Our search must be for a means of sustaining the act, not for reasons which might require

its condemnation." (*State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 565, 61 N. W. 2d 903.) The duty of this court is ". . . if possible, to so construe the statute as to find it in harmony with accepted constitutional principles. . . ." (*State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 13, 139 N. W. 2d 585.)

However, in the case before us, the legislative history of the enactment does not support the claim that the legislature really did not intend to provide what it clearly did provide. The majority locates a legislative intent in sec. 144.05 (1), Stats. 1969, not "to accomplish more" than was proposed in a senate bill, introduced but not passed in the 1963 legislative session, two years before the law involved was passed in the 1965 legislative session. As introduced in the earlier session, the senate bill had no mandatory provision that qualifying municipalities "shall be added" to metropolitan sewerage districts. However, in the assembly, an amendment was proposed, substantially providing the mandatory feature involved in the case before us. That assembly amendment was defeated. However, in the state senate, on re-referral of the bill, an amendment, identical to the amendment defeated in the assembly, was adopted. The bill, as amended to add the mandatory feature, was not enacted into law, the legislature adjourning without taking final action. It is the language of the "shall be added" amendments, as much as proposals of the original bill, that are part of the legislative history here, particularly because the second sentence of sec. 144.05 (1), containing the "shall be added" provision graduated from a proposed amendment in the 1963 session to an integral part of the law passed in the 1965 session. The issue of "shall be added" versus "may be added" was debated and discussed by both houses in 1963, and "shall be added" came out the winner by reason of it being made part of the statute as enacted in 1965.

The legislative history makes it clear, as might be expected, that lawmakers from the city of Madison opposed and voted against the mandatory attachment of qualifying municipalities in a metropolitan sewerage district. The legislative history makes it as clear, as also might be expected, that lawmakers from Sun Prairie, Stoughton and smaller communities in Dane county supported and voted for the mandatory inclusion of qualifying municipalities in the metropolitan sewerage district. In the legislature the representatives of the smaller communities in the county won the battle. In the courts they have now lost the war, but it is difficult to see how it can be contended that this result is what the legislature intended when it provided by statute that petitioning municipalities, following a prescribed procedure and meeting required qualifications "shall be added" to a metropolitan sewerage district. The writer would reverse, not affirm, the trial court order.

I am authorized to state that Mr. Justice BRUCE F. BEILFUSS and Mr. Justice CONNOR T. HANSEN join in this dissent.